Claf McCLAM, Appellant,

v.

Mayor Marion BARRY, Municipality of the District of Columbia, et al.

No. 81–1422.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 20, 1982.

Decided Jan. 4, 1983.

William R. Robertson, Washington, D.C. (appointed by this Court), for appellant. Amanda B. Pedersen, Washington, D.C., was on the brief, for appellant.

Leo N. Gorman, Asst. Corp. Counsel, with whom Judith W. Rogers, Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, and Laura W. Bonn, Asst. Corp. Counsel, Washington, D.C., were on the brief, for appellees.

Before MIKVA and BORK, Circuit Judges, BAZELON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge BORK.

BORK, Circuit Judge:

Appellant Claf McClam filed a pro se complaint in this case on September 4, 1980. The complaint, which names nine defendants, alleges that (1) in February 1978, defendant Davis, an officer with the District of Columbia Metropolitan Police Department, seized appellant's automobile and, instead of depositing it in a police yard for impounded property, converted it to his personal use; (2) in May 1978, defendant Davis assaulted appellant without cause and

broke his elbow; and (3) on June 14, 1979, defendant Davis, together with defendant Pyles, who was also a District of Columbia police officer, planted a gun on appellant, which resulted in his false arrest and imprisonment, and assaulted and threatened to kill him. The complaint does not allege facts suggesting misconduct by the other named defendants. Based on these three incidents, the complaint alleges both common-law and constitutional torts, the latter allegedly arising directly under the Constitution as *Bivens*-type actions, *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The causes of action here accrued before 42 U.S.C. § 1983 (1976) became applicable to the District of Columbia. *See District of Columbia v. Carter,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973).

In response to the complaint, appellee District of Columbia moved for dismissal or summary judgment.[1] The district court dismissed all claims in the case. The court held that the common-law claims were barred by appellant's failure to comply with D.C.Code § 12–309 (1981), which requires written notice to the District of personal-injury or property-damage claims within six months of the injury or damage. The court dismissed the constitutional-tort claims on the ground that they were barred by the applicable one-year District of Columbia statute of limitations, D.C.Code § 12–301(4) (1981). This court subsequently affirmed the decision "as to all claims except those based on constitutional torts." Record at 14. In this appeal, the principal, though not the only, issue is whether the district court correctly dismissed the constitutional-tort claims by applying the one-year statute of limitations. We affirm in part, reverse in part, and remand for further proceedings.

## DISCUSSION

To clarify what issues are presented for decision and what issues remain on remand, it is necessary to discuss who the parties are, a subject that is somewhat confused at

1. Although the District of Columbia is not named in the complaint as a party, the district

court treated it as a party, and no named party has challenged that treatment.

this stage. The district court observed that only three of the nine named defendants were served with process, and the court treated the three served defendants as out of the case. It substituted the District of Columbia for two of them (Mayor Barry and Police Chief Jefferson) and remarked that "plaintiff makes no allegations of misconduct by" the third (Officer Gallup). Record at 8 n. 4. The court's reliance, in dismissing the common-law tort claims, on D.C.Code § 12–309, which applies only to the District, presupposes that only the District, and none of the named defendants, remained as a party.

At the time we affirmed the decision below on the common-law claims, we were not presented with a serious question about the district court's treatment of the parties. That ruling should be understood as having been made on the assumption that only the District of Columbia was a defendant. We simply did not consider whether other defendants properly remained in the case.

Addressing the issue for the first time, we agree with appellant that the validity of service is not now before us. Brief of Appellant at 2 n. 1. Invalid service is a ground for dismissal, Fed.R.Civ.P. 12(b)(5); *Peterson v. Sheran,* 635 F.2d 1335, 1337 (8th Cir.1980), but the record is unclear on the validity of the service in this case. On remand, the district court should address the issue. If the district court concludes that service was valid, it must consider both the constitutional and the common-law claims that remain, but D.C.Code § 12–309, which applies only to the District of Columbia, is no ground for dismissal against any other defendant. For purposes of this appeal, we assume without deciding that failure of service has not removed defendants Davis, Pyles, Wright, Andres, Everett, and Jacobs from the case.

■ Appellees argue that the cases against Mayor Barry, Police Chief Jefferson, and Officer Gallup were properly dismissed because the complaint alleges no misconduct on the part of these defendants, who, they correctly observe, as co-employees of Officers Davis and Pyles, cannot be liable on a theory of respondeat superior. *Tarpley v. Greene,* 684 F.2d 1 (D.C.Cir. 1982). Indeed, appellees contend that the same argument warrants dismissal of the cases against all of the defendants except Officers Davis and Pyles. Appellees are correct in stating that the complaint alleges no wrongdoing whatever on the part of anyone but Officers Davis and Pyles and thus fails to state a cause of action against any other defendant. The complaint fails to meet the fundamental requirement of notice pleading, to put each defendant on notice of the alleged wrong for which the plaintiff seeks relief. *See* Fed.R.Civ.P. 8; 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1202, at 59–66 (1969). This failure, however, does not justify dismissal at this juncture. Plaintiff filed his complaint pro se; he should be given an opportunity to make his general allegations more specific by pointing to some actionable misconduct on the part of defendants other than Officers Davis and Pyles, if there was any, in the incidents described in the complaint. If no defendant would be prejudiced thereby, the district court should allow the filing of the more specific, amended complaint. *See* Fed.R.Civ.P. 15; *Foman v. Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Wyant v. Crittenden,* 113 F.2d 170, 175 (D.C.Cir.1940); *Gutierrez v. Vergari,* 499 F.Supp. 1040 (S.D.N.Y.1980).

■ The case against the District of Columbia, however, should be dismissed because of appellant's failure to comply with D.C.Code § 12–309. That section provides:

An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Commissioner [Mayor] of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section.

The district court held that this section barred appellant's common-law claims against the District, no adequate notice having been given to the Mayor. This court affirmed that holding. As appellant gave no notice of his constitutional claims to the District, those claims against the District are barred if this notice provision applies to *Bivens*-type suits. For the reasons set out below, we hold that it does.

This court has previously stated, even if it has not squarely held, that the provision applies to a constitutional cause of action. In *Marshall v. District of Columbia Government,* 559 F.2d 726 (D.C.Cir.1977), the court remanded the case for the district court to consider whether the jurisdictional amount requirement of 28 U.S.C. § 1331(a) (1976) applied to bar the plaintiff's claim that discrimination against him on the basis of his status as an adjudicated bankrupt violated the Constitution. The court pointed out that, even if the claim were not barred by the jurisdictional amount requirement, the claim might nonetheless be barred because "[s]uits against the District of Columbia are subject to a six-month notice requirement. D.C.Code § 12–309 (1973)." 559 F.2d at 730. Thus, this court has already rejected the holding in *Lively v. Cullinane,* 451 F.Supp. 999, 1000 (D.D.C.1976)—the one case relied on by appellant—that D.C.Code § 12–309 applies only to common-law and not to constitutional claims. In *Dellums v. Powell,* 566 F.2d 216 (D.C.Cir. 1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978), moreover, this court devoted three pages to discussing whether, in a *Bivens*-type class action, a single notice by the class counsel sufficed to discharge the "statutory notice requirements of 12 D.C.Code § 309" for all the class members. *Id.* at 228–30. That entire discussion was pointless unless the local law applies to constitutional-tort claims, and the court nowhere suggested that applicability of the provision was merely assumed for purposes of the case.

Although those cases effectively foreclose the issue, we think it worth mentioning several considerations that independently support the view that section 12–309 applies

to constitutional claims. First, the language of the provision is unquestionably broad; it cannot be read to contain even a hint that it applies only to common-law claims. In addition, constitutional claims clearly come within the purposes of the provision, which are, "primarily, to provide the District an opportunity to investigate claims while the circumstances giving rise to them are fresh and, secondarily, to provide an opportunity for settlement." *Dellums v. Powell,* 566 F.2d at 230. The provision's functions of "protect[ing] the District of Columbia against unreasonable claims" and of "encourag[ing] the prompt settlement of meritorious claims," *Pitts v. District of Columbia,* 391 A.2d 803, 807 (D.C. 1978), would be significantly undercut by the exclusion from its coverage of all federal or even all constitutional claims for damages. We infer that the D.C.Code provision was an intentional limitation on the right to bring even federal causes of action for damages against the District of Columbia. That inference is further supported by Congress's express provision of similar notice requirements in various federal civil rights laws. *See, e.g.,* 42 U.S.C. § 2000e–5(e) (1976) (requiring notice to EEOC of employment discrimination claim within 180 days of accrual of claim, or within 300 days in certain cases); 29 U.S.C. § 626(d)(1) (1976) (requiring notice to Secretary of Labor of age discrimination claim within 180 days of accrual of claim).

On the decisive issue of congressional intent, therefore, the D.C. notice provision is unlike the police-recordkeeping provision at issue in *Sullivan v. Murphy,* 478 F.2d 938 (D.C.Cir.), *cert. denied,* 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973). The court there accurately characterized the record-keeping law as a "local housekeeping" provision enacted "as part of a general revision of police recordkeeping procedures" and not intended "to limit the remedial jurisdiction of the Federal courts." *Id.* at 972. The D.C. law at issue in *Sullivan,* moreover, would have foreclosed the most effective forward-looking remedy for unconstitutional arrests, namely, expungement of records.

In contrast, the notice provision here neither removes a traditional equitable remedy nor presents substantial obstacles to the prosecution of a constitutional-tort claim; it merely establishes a requirement that any conscientious prospective plaintiff can readily meet and that has many analogues in federal civil rights laws.

Application of D.C. Code § 12–309 to constitutional claims is also supported by the rationale of the rule, discussed more fully below, requiring application of local statutes of limitations to claims based on federal laws that specify no limitations period. That rule rests on deference to the local balancing of interests embodied in statutes of limitations—a balancing of the interest in allowing the prosecution of valid claims against the interest in preventing the prosecution of claims that, because of delay, cannot be fairly litigated. *See Board of Regents v. Tomanio,* 446 U.S. 478, 487, 100 S.Ct. 1790, 1796, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency,* 421 U.S. 454, 464, 95 S.Ct. 1716, 1722, 44 L.Ed.2d 295 (1975). The same balancing of interests lies behind the D.C.Code notice provision. For all these reasons, we hold that the D.C.Code notice provision bars appellant from pursuing his claims against the District.

■ The statute-of-limitations issue presented in this case does not arise with respect to all of the claims in appellant's complaint. First, as both parties agree, the seizure and conversion claim accruing in February 1978, in both its constitutional and common-law forms, is not subject to the one-year limitation period of D.C.Code § 12–301(4). Rather, the applicable statute of limitations is three years. The common-law version clearly falls under the three-year rule of D.C.Code § 12–301(2), which covers actions "for the recovery of personal property or damages for its unlawful detention." The constitutional claim falls either under that rule or under the three-year rule

of D.C.Code § 12–301(8), which covers actions "for which a limitation is not otherwise specially prescribed." Plaintiff having filed his complaint on September 4, 1980, his seizure and conversion claim is timely.[2]

■ For different reasons, the statute-of-limitations issue is not presented either by the false-arrest component or by the assault component of the claim arising out of appellant's arrest on June 14, 1979. As to the false-arrest claim, both the common-law and constitutional versions are barred. A common-law false arrest claim is defeated by a subsequent conviction on the charges on which the claimant was arrested. *See Menard v. Mitchell,* 430 F.2d 486, 491 n. 26 (D.C.Cir.1970); 1 F. Harper & F. James, *The Law of Torts* § 4.12, at 345 (1956). Appellant's conviction here on the charges on which he was arrested on June 14, 1979, *see* Appendix to Brief for Appellee, bars his common-law false arrest claim. The constitutional version of that claim, which appellant concedes is merely a common-law false arrest claim in constitutional dress, we conclude must likewise be dismissed.

First, this court has stressed the near identity of the "common law and constitutional variants" of "[t]he tort action of false arrest" brought against police officers. *Dellums v. Powell,* 566 F.2d 167, 175 (D.C. Cir.1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978). The court noted in *Dellums* that both the interests protected and the "focal point[s]" of the two actions—whether the arresting officer was justified in ordering the arrest—are the same. *Id.* Indeed, that case held that the mechanics of pleading and proof in a *Bivens*-type action are identical to those in the parallel common-law action, and the opinion analyzed the elements of the claims as if they were identical. *Id.* at 175–76. It follows from *Dellums* that, if subsequent conviction establishes as a matter of law

---

**2.** Appellee contends that the factual allegations in the complaint cannot give rise to a Fourth Amendment violation. Because this argument was not addressed below, we do not here analyze the legal standards to be applied, leaving

that task to be performed in the first instance by the district court, which might require fuller development of the factual record before addressing the issue.

that the arrest was justified for common-law purposes, it should likewise establish that the arrest was justified for constitutional purposes. *See Martin v. Delcambre,* 578 F.2d 1164, 1165 (5th Cir.1978); *Shank v. Spruill,* 406 F.2d 756, 757 (5th Cir.1969).[3]

■ The reasons for dismissing the constitutional false-arrest claim do not apply to the assault component of the claim arising from the arrest on June 14, 1979. Nor does that component, in either its constitutional or common-law form, present any statute-of-limitations problem. Appellees correctly concede that, whatever statute of limitations applies to this 1979 assault claim, its running was tolled by appellant's imprisonment, which commenced at the time the cause of action accrued and continued at least until appellant filed his complaint. *See* D.C.Code § 12–302 (1981). There is thus no statute-of-limitations bar to appellant's pursuing his claim that the arresting officers unlawfully assaulted and threatened to kill him.

■ The only statute-of-limitations question in this case is which limitations period applies to the constitutional form of the May 1978 assault claim, which we will refer to simply as the assault claim. (The common-law form is clearly barred by D.C.Code § 12–301(4).) Both parties agree that because no statute of limitations for this *Bivens*-type action has been expressly provided by Congress, the proper statute to apply is "the most appropriate one provided by [D.C.] law." *Johnson v. Railway Express Agency,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975).[4] Appellees contend that the applicable statute is D.C. Code § 12–301(4), which specifies a one-year period for actions "for libel, slander, assault, battery, mayhem, wounding, malicious prosecution, false arrest or false imprisonment." Appellant contends that the constitutional basis of his claim makes application of that section inappropriate and that the only appropriate statute is D.C. Code § 12–301(8), which specifies a three-year period for actions "for which a limitation is not otherwise specially prescribed." Our analysis of the Supreme Court's pronouncements on this subject lead us to conclude that the applicable statute of limitations in this case is section 12–301(4). Because appellant filed his complaint more than one year after his assault cause of action accrued, he may not pursue that claim.

This court has never squarely faced the question of what local statute of limitations applies to a *Bivens*-type action for assault.

3. In this case, we may reach the same conclusion by a different route. The factual basis for appellant's constitutional false-arrest claim is that the gun he was convicted of possessing was planted on him by the arresting police. That contention, however, was appellant's defense at his criminal trial, and the jury resolved the factual issue raised by that claim against him, a resolution upheld by the District of Columbia Court of Appeals. *See* Appendix to Brief of Appellee. Appellant should be precluded from relitigating the issue here.

*Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), held that collateral estoppel should bar an action under 42 U.S.C. § 1983 (1976) based on factual claims actually, fairly, and fully litigated, and decided against the section 1983 claimant, in an earlier state-court trial, even where the trial was a criminal trial in which the section 1983 claimant was the defendant. That decision rests on the Supreme Court's conclusion that section 1983 was not intended to derogate from the federal courts' general, deep-rooted practice of applying collateral estoppel to state-court judgments. The creation of *Bivens*-type causes of action was

likewise not so intended, the purpose being merely to create a damages remedy, parallel to section 1983, against federal officials in some circumstances. *See Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). For that reason, and because fairness and judicial orderliness are served by maintaining that parallelism, collateral estoppel should apply in *Bivens*-type actions as it applies in section 1983 actions. The factual basis of appellant's constitutional false-arrest claim having already been decided against him in the District of Columbia criminal proceedings, his claim must be dismissed.

4. We thus treat the District of Columbia as a state, *see Forrestal Village, Inc. v. Graham,* 551 F.2d 411, 413 (D.C.Cir.1977), because there is no evidence that Congress specifically contemplated its own causes of action, such as section 1983, in enacting the D.C.Code statute of limitations.

In *Eikenberry v. Callahan,* 653 F.2d 632, 635 & n. 11 (D.C.Cir.1981), the court referred to "the three-year period applicable to *Bivens* actions brought in the District of Columbia," citing D.C.Code § 12–301(8). The statute of limitations issue was not presented in the case, however, and the statement was made in passing, unsupported by any discussion. In any event, the action sought damages not for assault but for a violation of the First Amendment that bears no resemblance to any of the common-law torts listed in D.C.Code § 12–301(4). Thus, section 12–301(8) provided the proper limitations period in that case. Similarly, in *Fitzgerald v. Seamans,* 553 F.2d 220 (D.C.Cir. 1977), the court agreed with the parties to the case that section 12–301(8) applied, but the action was primarily for unlawful conspiracy to deprive plaintiff of his job, an allegation not covered by section 12–301(4) or by any other D.C.Code provision but section 12–301(8). In any event, the action was found time-barred even under the three-year rule. In *Macklin v. Spector Freight Systems,* 478 F.2d 979, 994 (D.C.Cir. 1973), decided before *Johnson v. Railway Express Agency,* the court applied section 12–301(8) to a federal civil rights claim, but the claim there, brought under 42 U.S.C. § 1981 (1976), was for racial discrimination, clearly not analogous to the torts listed in section 12–301(4).[5] In none of these cases did the court undertake any analysis of the statute-of-limitations problem either for constitutional actions generally or for assault claims in particular.

Appellant advances several arguments in support of his contention that the limitations period for the local assault law is inapplicable to the constitutional assault action. All of the arguments apply not only to assault claims but to all Constitution-based claims with common-law analogues. Thus, appellant argues that the two forms of claim protect different interests, noting

that in *Bivens,* 403 U.S. at 394, 91 S.Ct. at 2003, the Supreme Court stated that "[t]he interests protected by state laws regulating trespass and the invasion of privacy, and those protected by the Fourth Amendment's guarantee against unreasonable searches and seizures, may be inconsistent or even hostile." Appellant also argues that the elements and sources of the two kinds of causes of action are different, in that the constitutional claim requires proof of the denial (1) under color of local law (2) of a constitutional right, two elements irrelevant to the common-law assault cause of action. Appellant further argues that, as Justice Harlan once stated in a different context, "a deprivation of a constitutional right is significantly different from and more serious than a violation of a state right and therefore deserves a different remedy even though the same act may constitute both a state tort and the deprivation of a constitutional right." *Monroe v. Pape,* 365 U.S. 167, 196, 81 S.Ct. 473, 488, 5 L.Ed.2d 492 (1961) (Harlan, J., concurring). Finally, appellant argues that application of the local one-year limitations period would undermine the principal goals of *Bivens*-type actions—to provide compensation for and to deter the violation of constitutional rights.

Appellant's arguments have been relied on in various degrees in several circuit court cases holding inapplicable to Constitution-based claims state statutes that, like D.C. Code § 12–301(4), specify limitations periods for particular analogous common-law torts. *E.g., Regan v. Sullivan,* 557 F.2d 300 (2d Cir.1977); *Beard v. Robinson,* 563 F.2d 331 (7th Cir.1977), *cert. denied,* 438 U.S. 907, 98 S.Ct. 3125, 57 L.Ed.2d 1149 (1978); *Marshall v. Kleppe,* 637 F.2d 1217 (9th Cir.1980) (adopting much of the analysis of *De Malherbe v. International Union of Elevator Constructors,* 449 F.Supp. 1335 (N.D.Cal. 1978)). In contrast, those arguments have

---

5. In *Payne v. Government of the District of Columbia,* 559 F.2d 809, 817 n. 32 (D.C.Cir. 1977) (opinion of Robinson, J.), Judge (now Chief Judge) Robinson stated in passing that the interests protected by a constitutional cause of action for certain assaults differed

from those protected by the local cause of action for assault. But Judge Robinson was not speaking for the court, and he did not, in any case, argue that the differences he alluded to entailed a difference in the applicable statute of limitations.

been rejected, either explicitly or implicitly, in other circuit court cases holding such statutes of limitations applicable to Constitution-based claims. *E.g., Walden, III, Inc. v. Rhode Island,* 576 F.2d 945 (1st Cir.1978); *Carmicle v. Weddle,* 555 F.2d 554 (6th Cir. 1977); *Polite v. Diehl,* 507 F.2d 119 (3d Cir.1974) (en banc). We are not persuaded by appellant's arguments and agree with the latter line of cases.

At the outset it is important to note that we need not reject appellant's contentions that constitutional claims differ from closely analogous common-law claims in the interests they protect, in their elements and origins, and in their importance. For some claims, and in some respects, those contentions are undoubtedly true.[6] Appellant has failed, however, to establish that they entail rejection of the local limitations period for the common-law cause of action. Indeed, the governing Supreme Court decisions strongly suggest that the differences are not decisive ones for statute-of-limitations purposes.

In *Johnson v. Railway Express Agency,* the Supreme Court established the general principle that where "there is no specifically stated or otherwise relevant federal statute of limitations for a cause of action ..., the controlling period would ordinarily be the most appropriate one provided by state law." 421 U.S. at 462, 95 S.Ct. at 1721. The Court explained the policy of deference to state policy judgments that lies behind the principle:

> Although any statute of limitations is necessarily arbitrary, the length of the period allowed for instituting suit inevitably reflects a value judgment concerning the point at which the interests in favor of protecting valid claims are outweighed by the interests in prohibiting the prosecution of stale ones.... In borrowing a state period of limitation for application to a federal cause of action, a federal

court is relying on the State's wisdom in setting a limit ... on the prosecution of a closely analogous claim.

*Id.* at 463–64, 95 S.Ct. at 1721–1722. Noting that an exception to the rule requiring application of the state statute exists where its "application would be inconsistent with the federal policy underlying the cause of action," *id.* at 465, 95 S.Ct. at 1722, the Court held that the exception did not demand tolling of the statute of limitations in an action brought under 42 U.S.C. § 1981 (1976) while the plaintiff pursued the administrative remedies required by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5 (1976). The section 1981 action was therefore barred by the one-year limitations period assumed to be applicable in the case. 421 U.S. at 462 n. 7, 95 S.Ct. at 1721 n. 7.

■ *Johnson* requires a court deciding what state statute of limitations, if any, applies to a federal cause of action to choose the statute applicable to the most "closely analogous claim" unless applying that statute would be inconsistent with relevant federal policies. We believe that, contrary to appellant's contention, the Supreme Court did not intend the constitutional character of a cause of action by itself to be a ground for rejecting as not closely analogous an otherwise identical common-law cause of action. First, the Court made a point of noting that there is nothing "peculiar to a federal civil rights action that would justify special reluctance in applying state law." *Id.* at 464, 95 S.Ct. at 1722. Second, and more important, appellant's interpretation of the *Johnson* rule conflicts with the Supreme Court's formula for choosing a state limitations period. If the federal, or constitutional, character of a claim meant that some state limitations periods were too short, the Court would, presumably, have said so, and would not have directed that the period chosen be that applicable to a "closely analogous claim."

---

**6.** The special character of constitutional claims might be indicated by Congress's having provided for the awarding of attorney's fees to plaintiffs who win on some civil rights claims. 42 U.S.C. § 1988 (1976). Because it is doubtful that Congress could similarly provide for attor-

ney's fees in state common-law actions, however, the federal attorney's fees statute cannot be considered strong evidence of Congress's view of the importance of constitutional claims against government officials relative to analogous common-law claims against such officials.

This reading of *Johnson* is reinforced by the Supreme Court's decision in *Board of Regents v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980), to adopt state tolling provisions along with state limitations periods, a decision that underscores the policy of deference to state judgments behind the *Johnson* rule. The *Tomanio* Court explained the state judgment typically embodied in statutes of limitations as follows:

Statutes of limitations are not simply technicalities. On the contrary, they have long been respected as fundamental to a well-ordered judicial system. Making out the substantive elements of a claim for relief involves a process of pleading, discovery, and trial. The process of discovery and trial which result in the finding of ultimate facts for or against the plaintiff by the judge or jury is obviously more reliable if the witness or testimony in question is relatively fresh. Thus in the judgment of most legislatures and courts, there comes a point at which the delay of a plaintiff in asserting a claim is sufficiently likely either to impair the accuracy of the factfinding process or to upset settled expectations that a substantive claim will be barred without respect to whether it is meritorious.

*Id.* at 487, 100 S.Ct. at 1796. As this passage makes clear, the state judgment behind the establishment of limitations periods typically concerns two subjects: factfinding accuracy and settled expectations. Given a federal cause of action for which no limitations period is specified by federal law, some limitations period is required in order to avoid litigation that impairs accuracy or defeats expectations. *Johnson* and *Tomanio* direct that the trial court adopt the state statute of limitations for the most closely analogous claim because, when federal law has not spoken, the state statute is the only law available that reflects the ap-

propriate judgment about factfinding accuracy and settled expectations. It follows that, in determining what claim (among those for which a state limitations period is specified) is most closely analogous to a given federal claim, a court should select the claim most closely comparable to the federal claim with respect to factfinding accuracy and settled expectations. The comparison of any two claims will generally focus on the facts that must be litigated in trying them.[7]

We need not, and we cannot, say in advance how any given federal cause of action compares in the relevant respect with any given category of claims for which District of Columbia law specifies a limitations period. The proper mode of comparison is clear, however, and so too are several of its consequences. First, two claims need not be identical to be analogous for statute-of-limitations purposes, and even some significant differences will not warrant rejection of a specified period and adoption of the residual provision. *See, e.g., Forrestal Village, Inc. v. Graham,* 551 F.2d 411, 414 (D.C.Cir.1977) (even if local blue sky law requires no proof of scienter, its limitations period applies to action under section 10(b) of the Securities Exchange Act of 1934, which requires such proof: "this possible difference between the federal statute and the local statute is easily outweighed by their similarities in both purpose and substance"). Second, some claims, such as discrimination claims, are clearly not analogous to any of the causes of action listed in D.C.Code § 12–301(4). This court's opinions applying the residual provision to certain Constitution-based actions, *see* pp. 371–372 *supra,* are thus fully consistent with, indeed are explained by, our interpretation of the *Johnson* rule.

Most important, it is evident how to apply the proper mode of comparison in at least one important class of cases, a class

---

7. Not all facts put in issue by a given claim are important in the task of comparison. For example, that the defendant's action was done in his official capacity must be proved in a constitutional case, but the issue will usually be so simple a factual (as opposed to legal) matter that it will be insignificant for purposes of comparing claims in the respects relevant under *Johnson* and *Tomanio.*

that includes this case. If two claims, such as common-law false arrest and constitutional false arrest, or common-law assault and constitutional assault (as alleged here), are so alike that "plaintiffs can be expected to plead [the] common law [claim] as a pendent claim in constitutional suits," *Dellums v. Powell,* 566 F.2d at 176 n. 9 (false arrest), then the same judgment about repose applies to both claims. For such pairs of claims, the facts to be proved are largely the same, and principally for that reason but also because the two claims grow out of the same incident and seek to vindicate the same interests, settled expectations must be judged the same. Here, we conclude, the local-law claim that is "closely analogous" to the constitutional assault claim is the common-law assault claim.

Turning to the second aspect of the *Johnson* rule, appellant argues that, even if the most closely analogous claim to his constitutional assault claim is one subject to a one-year limitations period, application of the one-year period would be "inconsistent with the federal policy underlying the [constitutional] cause of action," *Johnson,* 421 U.S. at 465, 95 S.Ct. at 1722. Appellant's arguments in support of this contention, however, are the same general ones advanced in support of the contention that his constitutional claim is not analogous to his common-law claim. They fare no better in this context than in that. In *Johnson* the Supreme Court rejected the proposition that there is "anything peculiar to a federal civil rights action that would justify special reluctance in applying state law." 421 U.S. at 464, 95 S.Ct. at 1722. In *Tomanio* the Court observed that application of state limitations periods is not inconsistent with

either of the two principal policies embodied in section 1983, deterrence and compensation. 446 U.S. at 488, 100 S.Ct. at 1797. It also observed that the need for uniformity does not "warrant the displacement of state statutes of limitations for civil rights actions." *Id.* at 489, 100 S.Ct. at 1797.[8] The Court referred to *Robertson v. Wegmann,* 436 U.S. 584, 593, 98 S.Ct. 1991, 1996, 56 L.Ed.2d 554 (1978), as establishing that " '[a] state statute cannot be considered "inconsistent" with federal law merely because the statute causes the plaintiff to lose the litigation.' " 446 U.S. at 488, 100 S.Ct. at 1797. Appellant here has pointed to nothing more than that.

Finally, we find no merit in the argument that D.C.Code § 12–301(4)'s one-year period is simply too short for application to the constitutional cause of action. Nothing in *Johnson* or *Tomanio* suggests that a one-year period is, solely by virtue of its duration, inconsistent with any federal policy behind Constitution-based actions, including those of deterrence and compensation. *Johnson* may even be read to suggest, by omission, that one year is sufficient: the opinion lists (though does not address) several possible challenges to the one-year period presumed applicable; a challenge based simply on the length of the period is not among those listed. 421 U.S. at 462 n. 7, 95 S.Ct. at 1721 n. 7. In any event, we fail to see how a court could determine how long a limitations period should be for a given claim except by drawing analogies to claims with specific periods, and that task is one built into the first aspect of the *Johnson* rule. Mere shortness of time provides no independent ground for rejecting a state limitations rule.[9]

---

8. Although both cases concerned claims brought under civil rights statutes rather than directly under the Constitution, the Court's reasoning should apply equally to *Bivens*-type actions, which rest on no policies different from those behind section 1983, the statute in *Tomanio.*

9. In *Regan v. Sullivan,* 557 F.2d 300, 303 (2d Cir.1977), the Second Circuit observed that one advantage of applying a limitations period

longer than three years to a constitutional claim of false arrest is that criminal proceedings are likely to be completed before the limitations period expires. That advantage, however, is irrelevant for many Constitution-based claims, such as the assault claim here, and it can be achieved in many cases by staying civil cases pending completion of a related criminal case.

In short, appellant's constitutional assault claim is closely analogous in the relevant respect to the common-law assault cause of action for which D.C.Code § 12–301(4) provides a one-year limitations period. Application of that period is not inconsistent with any federal policy underlying the constitutional cause of action. The one-year period therefore applies to, and bars, appellant's claim.

On remand, the district court should examine the validity of service on defendants Davis, Pyles, Wright, Andres, Everett, and Jacobs. It should also allow appellant an opportunity to amend his complaint to allege some actionable misconduct (in the incidents described in the complaint) on the part of named defendants other than Davis and Pyles. Only those defendants properly served and adequately charged with misconduct may remain in the case; they will remain, however, for purposes of the two surviving nonconstitutional tort claims as well as their constitutional analogues. Those claims are the June 1979 assault claim and the February 1978 seizure and conversion claim, in both their constitutional and common-law forms. All other claims are dismissed, and the District of Columbia is dismissed as a party on all claims.