**Gary GARCIA, Plaintiff-Appellee,**

v.

**Richard WILSON and Martin Vigil, Defendants-Appellants.**

**Nos. 83–1017, 83–1018.**

United States Court of Appeals, Tenth Circuit.

March 30, 1984.

Ben M. Allen of Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, N.M. (John W. Cassell, Sp. Asst. Atty. Gen., Asst. Legal Advisor, New Mexico State Police, Santa Fe, N.M., filed a brief on behalf of defendant-appellant Vigil), for defendants-appellants.

Richard Rosenstock, Chama, N.M. (Steven G. Farber, Santa Fe, N.M., with him on the brief), for plaintiff-appellee.

Thomas L. Johnson of Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, N.M., filed a brief for amicus curiae State of New Mexico.

Before SETH, Chief Judge, and HOLLOWAY, McWILLIAMS, BARRETT, DOYLE, McKAY, LOGAN and SEYMOUR, Circuit Judges.

SEYMOUR, Circuit Judge.

Gary Garcia brought these consolidated civil rights actions under 42 U.S.C. § 1983 (1976) against former New Mexico State Police Officer Richard Wilson, and State Police Chief Martin Vigil. Garcia alleged that his constitutional rights were violated when Wilson viciously beat him on his face and body with a "slapper" and then sprayed him with tear gas. Garcia further alleged that Vigil had improperly permitted Wilson to be hired as a State Police officer when Vigil knew or should have known that Wilson had previously been convicted of several serious crimes and when Vigil had been advised not to hire Wilson by two high ranking New Mexico State Police officers. Garcia also asserted that Vigil had been grossly negligent in failing to train, supervise, and discipline Wilson properly when he knew that Wilson had assaulted other county residents after he became a police officer.

Defendants moved to dismiss the action, asserting that the suit was barred by the statute of limitations. The district court denied the motion and certified the issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) (1976).

The only issue before us is what limitations period should be applied to this section 1983 claim. We have determined to give en banc consideration to this case in order to harmonize our decisions in this area, resolve any inconsistencies, and establish a uniform approach to govern resolution of this question in future cases.

## I.

No statute of limitations is expressly provided for civil rights claims brought under section 1983. However, Congress has specifically directed us to look to state law in civil rights cases when federal law is deficient and the state law "is not inconsistent with the Constitution and laws of the United States." *See* 42 U.S.C. § 1988 (1976) [1] This admonition has been interpreted to mean that " 'the controlling period would ordinarily be the most appropriate one provided by state law.' " *Board of Regents v. Tomanio,* 446 U.S. 478, 485, 100 S.Ct. 1790, 1795, 64 L.Ed.2d 440 (1980) (quoting *Johnson v. Railway Express Agency,* 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975)).

■■■ The first step in selecting the applicable state statute of limitations is to characterize the essential nature of the federal action. *Knoll v. Springfield Township School District,* 699 F.2d 137, 140 (3d Cir.1983); *Braden v. Texas A & M University System,* 636 F.2d 90, 92 (5th Cir.1981); *Burns v. Sullivan,* 619 F.2d 99, 105 (1st Cir.), *cert. denied,* 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980). Characterization of such a federal claim is a matter of federal law. *UAW v. Hoosier Cardinal Corp.,* 383 U.S. 696, 706, 86 S.Ct. 1107, 1113, 16 L.Ed.2d 192 (1966); *Pauk v. Board of Trustees,* 654 F.2d 856, 865–66 & n. 6 (2d Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982); *Zuniga v. Amfac Foods, Inc.,* 580 F.2d 380, 383 (10th Cir.1978); *Williams v. Walsh,* 558 F.2d 667, 672 (2d Cir.1977). The court must then determine which state limitations period is applicable to this characterization. *Braden,* 636 F.2d at 92; *Burns,* 619 F.2d at 105. Although the federal courts are bound by the state's construc-

---

**1.** Section 1988 provides:
   "The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this Title, and of Title 'CIVIL RIGHTS,' and of Title 'CRIMES,' for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the

provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause ...."

42 U.S.C. § 1988 (Supp. V 1981).

tion of its own statutes of limitations, it is a question of federal law whether a particular statute, as construed by the state, is applicable to a federal claim. *Knoll,* 699 F.2d at 141–42; *Pauk,* 654 F.2d at 866 n. 6.

There is little dispute that these fundamental principles govern the choice of a limitations period for civil rights claims. However, the courts vary widely in the methods by which they characterize a section 1983 action, and in the criteria by which they evaluate the applicability of a particular state statute of limitations to a particular claim. The actual process used to select an appropriate state statute varies from circuit to circuit and sometimes from panel to panel. *See, e.g., Garcia v. University of Kansas,* 702 F.2d 849 (10th Cir. 1983); *Garmon v. Foust,* 668 F.2d 400 (8th Cir.) (en banc), *cert. denied,* 456 U.S. 998, 102 S.Ct. 2283, 73 L.Ed.2d 1294 (1982); *Beard v. Robinson,* 563 F.2d 331 (7th Cir. 1977), *cert. denied,* 438 U.S. 907, 98 S.Ct. 3125, 57 L.Ed.2d 1149 (1978).

Given the varied factual circumstances producing civil rights violations and the diversity of state limitations statutes, it is not surprising that no uniform approach to this problem has developed. Moreover, the Supreme Court has been singularly unhelpful in providing guidance on this important issue of federal law. The Court has instructed us to borrow "the state law of limitations governing an analogous cause of action," *Tomanio,* 446 U.S. at 483–84, 100 S.Ct. at 1794–95, to " 'adopt the local law of limitation,' " *Runyon v. McCrary,* 427 U.S. 160, 180, 96 S.Ct. 2586, 2599, 49 L.Ed.2d 415 (1976) (quoting *Holmberg v. Armbrecht,* 327 U.S. 392, 395, 66 S.Ct. 582, 90 L.Ed. 743 (1946)), and to apply "the most appropriate one provided by state law." *Johnson v. Railway Express Agency,* 421 U.S. at 462, 95 S.Ct. at 1721. Unfortunately, however, the Court has not addressed the issues that divide the circuits: what federal considerations are relevant to characterizing a civil rights claim and to determining whether a state limitations period is analogous or appropriate.

In the face of Congressional refusal to enact a uniform statute and the Supreme Court's failure to come to grips with the problem, it is imperative that we establish a consistent and uniform framework by which suitable statutes of limitations can be determined for all section 1983 claims in this circuit. In so doing, we must be mindful of the broad remedial purposes of this civil rights legislation. *See Childers v. Independent School District No. 1,* 676 F.2d 1338, 1342–43 (10th Cir.1982). However, the Supreme Court has clearly stated that the policies of certainty and repose embodied in statutes of limitations are not inconsistent with the purposes of section 1983 and are therefore not to be disfavored in civil rights cases. *See Tomanio,* 446 U.S. at 487–89, 100 S.Ct. at 1796–97. With these considerations in mind, we begin our analysis by examining the approaches adopted by other circuits.

### A. First Circuit

The First Circuit has characterized a section 1983 claim alleging the unconstitutional termination of public employment as sounding in tort, and has applied the Puerto Rican statute governing general tort suits to such a claim. *See Ramirez de Arellano v. Alvarez de Choudens,* 575 F.2d 315 (1st Cir.1978); *Graffels Gonzalez v. Garcia Santiago,* 550 F.2d 687 (1st Cir. 1977). However, in a subsequent case in Massachusetts, the court disregarded this characterization and chose instead to apply a state statute giving public employees six months to file an unlawful employment action in state court. The court stated that the statute was "specifically tailored to deal with the plaintiff's cause of action." *Burns v. Sullivan,* 619 F.2d 99, 106 (1st Cir.), *cert. denied,* 449 U.S. 893, 101 S.Ct. 256, 66 L.Ed.2d 121 (1980); *see also Holden v. Commission Against Discrimination,* 671 F.2d 30 (1st Cir.), *cert. denied,* 459 U.S. 843, 103 S.Ct. 97, 74 L.Ed.2d 88 (1982).[2]

---

**2.** The court in *Burns* reasoned that failure to apply the six-month limitations period govern-

ing discrimination claims filed under state law would allow plaintiffs to bypass the state admin-

In a recent case involving professional disciplinary proceedings in Maine, the First Circuit analogized plaintiff's section 1983 claim to various specific common law torts based on the underlying facts and the relief sought. *See Gashgai v. Leibowitz,* 703 F.2d 10 (1st Cir.1983) (alleged state deprivation of reputation and ability to practice medicine most analogous to defamation and "false light" invasion of privacy). The court adopted this approach without discussion, notwithstanding its arguable inconsistency with earlier cases. Thus, in *Walden, III, Inc. v. Rhode Island,* 576 F.2d 945, 947 (1st Cir.1978), the court refused to analogize the plaintiff's claim to a specific tort, remarking:

"While for purposes of deciding this case we need not rule finally on the appropriateness of ever referring to more than one statute of limitations should a precisely analogous state claim indisputably have a different limitations period, *it is obviously preferable that one statute of limitations, such as that provided for torts, apply generally to most if not all § 1983 actions arising in a particular jurisdiction.*"

*Id.* at 947 (emphasis added).

### B. Second Circuit

The Second Circuit recently affirmed its earlier decisions characterizing all section 1983 claims as actions on a liability created by statute. *Pauk v. Board of Trustees,* 654 F.2d 856, 866 (2d Cir.1981), *cert. denied,* 455 U.S. 1000, 102 S.Ct. 1631, 71 L.Ed.2d 866 (1982). The court refused to find section 1983 claims analogous to common law torts, stating that "[w]hile some § 1983 claims have counterparts in actions at common law, the constitutional tort remedied by § 1983 is 'significantly different from' state torts ...." *Id.* (quoting *Mon-*

roe v. Pape, 365 U.S. 167, 196, 81 S.Ct. 473, 488, 5 L.Ed.2d 492 (1961) (Harlan, J., concurring)). The court also rejected application of state statutes governing suits to recover for the tortious conduct of public employees, concluding that "[i]t would be anomalous for a federal court to apply a state policy restricting remedies against public officials to a federal statute that is designed to augment remedies against those officials, especially a federal statute that affords remedies for the protection of constitutional rights." *Id.* 654 F.2d at 862. The court pointed out that applying statutes governing actions on liability created by statute to all section 1983 claims provides uniformity in approach and is consistent with the broad remedial purposes of the civil rights acts. *Id.* at 866.

### C. Third Circuit

The Third Circuit applies "the limitation ... which would be applicable in the courts of the state in which the federal court is sitting had an action seeking similar relief been brought under state law." *Polite v. Diehl,* 507 F.2d 119, 122 (3d Cir.1974) (en banc) (applying Pennsylvania one-year statute to § 1983 claims analogous to false arrest, and two-year wrongful injury statute to claims analogous to assault and battery and coercion of guilty plea); *see also Meyers v. Pennypack Woods Home Ownership Association,* 559 F.2d 894, 900 (3d Cir.1977). The court examines "[t]he essential nature of the federal claim, including the relief sought and the type of injury alleged ... 'within the scheme created by the various state statutes of limitations.'" *Aitchison v. Raffiani,* 708 F.2d 96, 101 (3d Cir.1983) (quoting *Davis v. United States Steel Supply,* 581 F.2d 335, 337 (3d Cir. 1978)) (applying New Jersey Tort Claim

istrative proceedings and bring their claim in federal court. 619 F.2d at 107. Subsequent to the *Burns* decision, the Supreme Court clearly stated that this rationale is not relevant to determining limitations periods for the separate and independent remedies provided by sections 1981 and 1983. *See Board of Regents v. Tomanio,* 446 U.S. 478, 489–91, 100 S.Ct. 1790, 1797–98, 64 L.Ed.2d 440 (1980). The First Circuit has none-

theless continued to follow the *Burns* analysis. *See Holden v. Commission Against Discrimination,* 671 F.2d 30, 33 & n. 3 (1st Cir.), *cert. denied,* 459 U.S. 843, 103 S.Ct. 97, 74 L.Ed.2d 88 (1982); *Hussey v. Sullivan,* 651 F.2d 74, 75–76 (1st Cir.1981). To the extent that these cases are based on the ground rejected in *Tomanio,* they are unpersuasive.

Act two-year limitations). Thus the Third Circuit defines the federal cause of action in terms of factually similar state actions as set out in various state limitations schemes.

### D. Fourth Circuit

In characterizing the nature of a section 1983 cause of action, the Fourth Circuit has stated that

> "[i]n essence, § 1983 creates a cause of action where there has been injury, under color of state law, to the person or to the constitutional or federal statutory rights which emanate from or are guaranteed to the person. In the broad sense, every cause of action under § 1983 which is well-founded results from 'personal injuries.'"

*Almond v. Kent,* 459 F.2d 200, 204 (4th Cir.1972). Accordingly, the court in *Almond* applied the Virginia statute governing personal injuries to the plaintiff's claim against the sheriff and state police "not because there was a right of recovery at common law but because there was a violation of a constitutional right not to be beaten." *Id.* at 203–04. Citing *Monroe v. Pape,* 365 U.S. at 196, 81 S.Ct. at 488, the court held the alleged constitutional violation to be "more important than those transitory torts for which a one-year period is prescribed." *Id.* 459 F.2d at 204.

The court subsequently applied a West Virginia two-year personal injury statute rather than a five-year contract statute to a high school principal's allegation under sections 1981 and 1983 that his discharge was unconstitutional. *McCausland v. Mason County Board of Education,* 649 F.2d 278 (4th Cir.), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981). The court pointed out that "to demonstrate the required constitutional basis for his federal complaint he must allege personal injury transcending contract rights." *Id.* at 279. The court also relied on the *Almond* analysis in rejecting a state statute expressly applicable to section 1983 actions. *See Johnson v. Davis,* 582 F.2d 1316, 1319 (4th Cir.1978). Noting that the Virginia statute

limiting section 1983 actions was shorter than that applicable to personal injuries, the court concluded that the special limitations period undervalued the constitutional values at stake, and unreasonably discriminated against the "constitutional tort remedy." *Id.*

Notwithstanding the Fourth Circuit's otherwise consistent characterization of section 1983 as creating a cause of action for injury to personal rights, the court applies the state limitations for liability created by statute to all section 1983 claims arising in North Carolina. *See Cole v. Cole,* 633 F.2d 1083, 1092 (4th Cir.1980) (constitutional claims arising out of false arrest and abuse of process); *Bireline v. Seagondollar,* 567 F.2d 260, 263 (4th Cir. 1977) (allegedly discriminatory employment termination of state university instructor), *cert. denied,* 444 U.S. 842, 100 S.Ct. 83, 62 L.Ed.2d 54 (1979).

### E. Fifth Circuit

Two lines of cases have developed in the Fifth Circuit using different methods for selecting the most analogous state limitations period. *See Shaw v. McCorkle,* 537 F.2d 1289, 1292 (5th Cir.1976). One method uses the generally accepted two-step process in which the court first characterizes the essential nature of the federal claim and then determines, according to state law, which state period would apply to a state claim similar to the federal characterization. *Id.* "A second line of cases formulates a more direct method of selection, asking simply which state limitations period the state itself would have enforced had plaintiff brought an action seeking similar relief in a court of that state." *Id.* The court in *Shaw* concluded that these approaches are not inconsistent because they "in fact depend substantially on state law in catagorizing the essential nature of the claim presented ...." *Id.* at 1293. In keeping with this conclusion, the court has characterized section 1983 claims by reference to similar state law actions. *See Morrell v. City of Picayune,* 690 F.2d 469 (5th Cir.1982) (assault by police officer not gov-

erned by Mississippi one-year statute because under Mississippi law such is not mere assault and battery but breach of sheriff's official duty); *Lavellee v. Listi,* 611 F.2d 1129 (5th Cir.1980) (Louisiana one-year assault statute of limitations applied in § 1983 action).

Although noting its holding in *Shaw* that federal courts draw heavily on state law in catagorizing civil rights claims, the court nevertheless concluded in an employment termination case that all section 1983 causes of action are essentially tortious in nature. *Braden v. Texas A & M University System,* 636 F.2d 90, 92 (5th Cir.1981). The plaintiff in *Braden* alleged that his discharge deprived him of liberty and property interests without due process. The court refused to analogize this claim to a state law action arising out of an employment contract, concluding that "[l]iability is imposed for subjecting a person to the deprivation of rights secured by the Constitution and laws of the United States, not for breach of contract." *Id.* Accordingly, the court applied state limitations periods governing tort actions for injury to the person of another and actions for trespass to or conversion of property.

Although the circuit subsequently employed the analysis set out in *Braden, see Jones v. Orleans Parish School Board,* 688 F.2d 342 (5th Cir.) (employment termination claim under §§ 1981, 1983 held tortious in Louisiana), *cert. denied,* —— U.S. ——, 103 S.Ct. 2420, 77 L.Ed.2d 1310 (1982); *Moore v. El Paso County,* 660 F.2d 586 (5th Cir.1981) (same in Texas), *cert. denied,* 459 U.S. 822, 103 S.Ct. 51, 74 L.Ed.2d 57 (1982); *Rubin v. O'Koren,* 644 F.2d 1023 (5th Cir.1981) (same in Alabama), it nonetheless applied a state statute governing unwritten employment contracts to a section 1981 claim in *White v. United Parcel Service,* 692 F.2d 1 (5th Cir.1982) (Mississippi). Unconstitutional employment termination is thus viewed as tortious in Texas, Alabama, and Louisiana, and contractual in Mississippi.

## F. Sixth Circuit

The Sixth Circuit's approach to characterizing civil rights claims has varied according to available state statutes of limitations. In an employment discrimination suit in Michigan, the court stated that the essence of a section 1983 action is "a claim to recover damages for injury wrongfully done to the person." *Madison v. Wood,* 410 F.2d 564, 567 (6th Cir.1969). The court said that " '[t]he Fourteenth Amendment protects the most fundamental personal rights and liberties guaranteed to any citizen of the United States. When one is deprived of his civil rights, it is clear that the injury is to his person ....' " *Id.* (quoting *Krum v. Sheppard,* 255 F.Supp. 994, 997 (W.D.Mich.1966)).

In subsequent employment discrimination suits, however, the court has applied state statutes governing a liability created by statute. *See Mason v. Owens-Illinois, Inc.,* 517 F.2d 520 (6th Cir.1975) (Ohio); *Garner v. Stephens,* 460 F.2d 1144 (6th Cir.1972) (Kentucky). The court justified this result in *Garner* by pointing out that the state court had limited application of the personal injury limitations statute to claims involving physical injuries. *Id.* at 1146–47. Elsewhere the court has expressly refused to characterize section 1983 suits based on false arrest and malicious prosecution as actions on a liability created by statute, and has applied instead the limitations governing factually similar common law torts. *See Kilgore v. City of Mansfield,* 679 F.2d 632, 634 (6th Cir.1982) (Ohio); *Carmicle v. Weddle,* 555 F.2d 554, 555 (6th Cir.1977) (Kentucky).

## G. Seventh Circuit

Resolving a split on the issue, the Seventh Circuit held that a limitations period for section 1983 actions should not be selected by analogizing the facts underlying the claim to traditional common law torts. *Beard v. Robinson,* 563 F.2d 331, 336–37 (7th Cir.1977), *cert. denied,* 438 U.S. 907, 98 S.Ct. 3125, 57 L.Ed.2d 1149 (1978). In *Beard* the court applied the Illinois limita-

tions statute applicable to statutory causes of action, stating:

> "By following the *Wakat* [*v. Harlib*, 253 F.2d 59 (7th Cir.1958),] approach of applying a uniform statute of limitations, we avoid the often strained process of characterizing civil rights claims as common law torts, and the
>
>> '[i]nconsistency and confusion [that] would result if the single cause of action created by Congress were fragmented in accordance with analogies drawn to rights created by state law and the several different periods of limitation applicable to each state-created right were applied to the single federal cause of action.' *Smith v. Cremins,* [308 F.2d 187] at 190 [ (9th Cir. 1962) ]."

*Id.* at 337.

Although the court indicated that one limitations period should uniformly be applied to all civil rights claims, the court has found it impossible to do so given the differing statutes of limitations in other states. *See, e.g., Movement for Opportunity & Equality v. General Motors Corp.,* 622 F.2d 1235, 1242–43 (7th Cir.1980) (Indiana two-year personal injury statute applied to § 1981 claim); *Sacks Brothers Loan Co. v. Cunningham,* 578 F.2d 172, 176 (7th Cir.1978) (Indiana five-year statute governing actions against a public officer applied to § 1983 action against tax assessor).

### H.  Eighth Circuit

The Eighth Circuit also developed two inconsistent lines of cases. One line analogized civil rights cases to similar common law torts. *See, e.g., Johnson v. Dailey,* 479 F.2d 86 (8th Cir.1973) (Iowa two-year personal injury statute applied to § 1983 claim analogous to malicious prosecution action), *cert. denied,* 414 U.S. 1009, 94 S.Ct. 371, 38 L.Ed.2d 246 (1973). The other line held that such an analogy is improper because a civil rights claim is fundamentally different from a common law tort. *See, e.g., Lamb v. Amalgamated Labor Life Insurance Co.,* 602 F.2d 155 (8th Cir.1979)

(Missouri five-year statute governing liability created by statute applied to § 1983 claim alleging conspiracy to deprive plaintiff of constitutional rights); *Glasscoe v. Howell,* 431 F.2d 863 (8th Cir.1970) (Arkansas three-year statute governing liability created by statute, or five-year general statute applies to a § 1983 action against police, rather than one-year statute for assault and battery or false imprisonment).

The court addressed this inconsistency in *Garmon v. Foust,* 668 F.2d 400 (8th Cir. 1982) (en banc), *cert. denied,* 456 U.S. 998, 102 S.Ct. 2283, 73 L.Ed.2d 1294 (1982), and rejected

> "the tort analogy because it unduly cramps the significance of section 1983 as a broad, statutory remedy. Section 1983 provides a cause of action for deprivation of civil rights that in no way depends upon state common law. A litigant may pursue a section 1983 action rather than, or in addition to, state remedies."

*Id.* at 406. The court based its determination on its conclusion that " 'a deprivation of a constitutional right is significantly different from and more serious than a violation of a state right and therefore deserves a different remedy even though the same act may constitute both a state tort and the deprivation of a constitutional right.' " *Id.* (quoting *Monroe v. Pape,* 365 U.S. at 196, 81 S.Ct. at 488 (Harlan, J., concurring)).

### I.  Ninth Circuit

The Ninth Circuit, in an often quoted opinion, also has concluded that common law tort analogies are not appropriate because the elements of a common law tort are not the same as the elements establishing a cause of action under section 1983. *See Smith v. Cremins,* 308 F.2d 187, 190 (9th Cir.1962) (California). In keeping with this conclusion, the Ninth Circuit almost consistently has characterized claims under sections 1981 and 1983 as actions on a liability created by statute. *See, e.g., Plummer v. Western International Hotels Co.,* 656 F.2d 502, 506 (9th Cir.1981) (Oregon, § 1981); *Bratton v. Bethlehem*

*Steel Corp.*, 649 F.2d 658, 663 (9th Cir. 1980) (California, § 1981); *Clark v. Musick*, 623 F.2d 89, 92 (9th Cir.1980) (Oregon, § 1983). *Tyler v. Reynolds Metals Co.*, 600 F.2d 232, 234 (9th Cir.1979) (Arizona, § 1981).

The one exception to the Ninth Circuit's uniform approach is *Kosikowski v. Bourne*, 659 F.2d 105 (9th Cir.1981), in which the court adopted a state limitations period expressly applicable to section 1983 claims brought in state court. The court stated that

> "[t]his precise expression of the intent of the Oregon Legislature makes unnecessary a resort to a characterization of appellants' cause of action in the manner employed by this court in *Clark v. Musick*, 623 F.2d 89 (9th Cir.1980). Such characterization serves no purpose other than to provide guidance in the selection of the applicable state statute. When the state has expressly made that selection the federal courts should accept it unless to do so would frustrate the purposes served by the federal law upon which the plaintiff's claims rest."

*Id.* at 107.

### J. Eleventh Circuit

The Eleventh Circuit has adopted as precedent the decisions of the Fifth Circuit handed down by that court as of September 30, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc). Thus the Eleventh Circuit follows the Fifth Circuit's approach of characterizing civil rights claims by reference to available state statutes, drawing heavily on state law. *See McGhee v. Ogburn*, 707 F.2d 1312, 1315 (11th Cir.1983).

### K. D.C. Circuit

The D.C. Circuit recently addressed the disagreement among the circuits over whether state statutes governing common law torts are applicable to claims based on constitutional violations. *See McClam v. Barry*, 697 F.2d 366, 371–73 (D.C.Cir.1983). The court recognized that constitutional actions may "differ from closely analogous common-law claims in the interests they protect, in their elements and origins, and in their importance." *Id.* at 373. However, it held that these differences are not "a ground for rejecting as not closely analogous an otherwise identical common-law cause of action." *Id.* The court concluded that limitations periods promote factfinding accuracy and settled expectations, and observed that

> "in determining what claim (among those for which a state limitations period is specified) is most closely analogous to a given federal claim, a court should select the claim most closely comparable to the federal claim with respect to factfinding accuracy and settled expectations. *The comparison of any two claims will generally focus on the facts that must be litigated in trying them.*"

*Id.* at 374 (emphasis added). It then applied the one year statute governing assault and battery to the plaintiff's constitutional claim against the defendant police officers.

The court's decision in *McClam* is based on its assumption that the facts establishing the elements peculiar to the constitutional cause of action are simple to prove. *Id.* at 374 n. 7. The *McClam* court therefore reasoned that these elements do not render the constitutional claim so different from the comparable state cause of action that the particular state statute of limitations is inappropriate for a section 1983 action.

### II.

The fundamental point of disagreement in selecting a statute of limitations for civil rights actions is whether such claims should be characterized in terms of the specific facts generating a particular suit, or whether a more general characterization of such claims should be applied regardless of the discrete facts involved. Our past practice usually has been to characterize the section 1983 claim according to its underlying specific facts. *See, e.g., Clulow v. Oklahoma*, 700 F.2d 1291, 1299 (10th Cir. 1983); *Shah v. Halliburton Co.*, 627 F.2d

1055, 1059 (10th Cir.1980); *Zuniga v. Amfac Foods, Inc.,* 580 F.2d 380, 383–87 (10th Cir.1978). However, we have also variously characterized a section 1983 action alleging wrongful discharge or refusal to hire as a liability created by statute, *Spiegel v. School District No. 1,* 600 F.2d 264, 265–66 (10th Cir.1979), as contractual in nature, *Hansbury v. Regents of the University of California,* 596 F.2d 944, 949 n. 15 (10th Cir.1979), and as a noncontractual injury to the rights of another, *Garcia v. University of Kansas,* 702 F.2d 849, 850–51 (10th Cir.1983). As more fully explained below, we decide today to adopt a general characterization for all civil rights claims based on our perception of the nature of such claims, and our conviction that this approach will ultimately best effectuate the purposes of both the civil rights acts and statutes of limitations.

We cannot accept the analysis used by the D.C. Circuit in *McClam* to support comparing civil rights actions to factually similar state court suits. *McClam* rests on two assumptions that the D.C. Circuit took to be true in the majority of cases. The court assumed first that the facts required to establish the elements of a federal claim are easy to prove, and that the federal claim therefore is not sufficiently distinct from a comparable state cause of action to warrant the application of a different statute of limitations. The court further assumed that state statutes of limitations are concerned primarily with factfinding certainty and settled expectations. While both of these assumptions may sometimes be true, they are not true sufficiently often to justify adopting an approach that itself creates substantial problems.

■ To establish a claim under section 1983, a plaintiff must prove action under color of state law resulting in the deprivation of constitutional or federal rights. The court in *McClam* believed that whether a defendant acted in an official capacity is usually a simple factual matter. *Id.* 697 F.2d at 374 n. 7. Even accepting this generalization as valid, *but cf. Gilmore v. Salt Lake Community Action Program,* 710 F.2d 632, 635–39 (10th Cir.1983), the facts

establishing a constitutional or statutory deprivation frequently are complex and peculiarly within the knowledge of the defendant. *See, e.g., Miller v. City of Mission,* 705 F.2d 368 (10th Cir.1983); *Clulow v. Oklahoma,* 700 F.2d 1291; *Key v. Rutherford,* 645 F.2d 880 (10th Cir.1981). The plaintiff need not prove such facts to recover in a state law action. We conclude that the evidence necessary to support a section 1983 claim is so often significantly distinct from the facts at issue in an arguably analogous state cause of action that the differences cannot be dismissed as unimportant. Accordingly, a state's determination that a state claim should be governed by a particular limitations period to ensure accuracy in the factfinding process is not necessarily applicable to a federal claim arising out of the same incident but resting on different elements involving proof of different facts.

While we agree with the court's premise in *McClam* that the state's judgment in setting limitations periods is typically concerned with factfinding accuracy and settled expectations, those purposes are not the only ones motivating the enactment of such statutes. Limitations periods specifically applicable to suits against state and local officials may well be motivated by a legislative desire to limit the liability of the public entity employer in conjunction with a waiver of sovereign immunity. As the Second and Fourth Circuits have pointed out, borrowing such limitations periods is not consistent with the remedial purpose of section 1983. *See Pauk v. Board of Trustees,* 654 F.2d at 862; *Johnson v. Davis,* 582 F.2d at 1319. Thus, unlike the Ninth Circuit in *Kosikowski v. Bourne,* 659 F.2d at 107, we are unwilling to hold that a state's articulation of the limitations period specifically applicable to section 1983 claims is determinative of the federal issue and relieves the federal courts from characterizing a civil rights claim as a matter of federal law.

Attempting to compare civil rights claims with particular state law actions creates

other problems that are clearly revealed by our own experience and by our examination of the results of this approach in other circuits. Virtually any section 1983 claim is arguably analogous to more than one state cause of action. *See, e.g., Clulow,* 700 F.2d at 1299–1300; *Shah,* 627 F.2d at 1057–59. Thus, attempting to determine which state claim is most nearly comparable is an uncertain task with no definitive answer. In the First Circuit, for example, a section 1983 cause of action founded on employment discrimination is tortious in Puerto Rico, *see Ramirez de Arellano v. Alvarez de Choudens,* 575 F.2d at 318–19, but does not sound in tort in Massachusetts simply because the state limitations scheme is different there, *see Burns v. Sullivan,* 619 F.2d at 105–07. The Fifth Circuit has characterized unconstitutional employment discrimination both as a tortious injury to the rights of another, *see Braden v. Texas A & M University System,* 636 F.2d at 93, and as an action on an unwritten contract, *see White v. United Parcel Service,* 692 F.2d at 2–3. As noted above, we have characterized a section 1983 employment discrimination claim three different ways in this circuit in *Spiegel, Hansbury,* and *Garcia.* This anomaly is the predictable outcome of characterizing the federal claim by deferring to the state court's treatment of a state claim seeking similar relief. Variations in state law and factual distinctions often become dispositive even though they are irrelevant to the elements of the constitutional cause of action.

The resulting uncertainty encourages both parties to argue the state factual analogy favorable to their respective positions at every stage of the proceedings with a justifiable hope of success. Consequently, describing the federal cause of action in terms of state law claims does not promote settled expectations and repose, but instead encourages voluminous litigation that is collateral to the merits and consumes

scarce judicial resources. Moreover, as pointed out above, this approach results in the unequal treatment of similar claims. Such uneven application may cause the losing party to infer that the choice of a limitations period in his case was result oriented, thereby undermining his belief that he has been dealt with fairly. This objectionable possibility is particularly undesirable in the context of socially sensitive civil rights litigation. In sum, we conclude that the arguments in favor of this approach are not persuasive in view of its disadvantages. All of the federal values at issue in selecting a limitations period for section 1983 claims are best served by articulating one uniform characterization describing the essential nature underlying all such claims.

■ Those courts adopting this latter approach have characterized the fundamental nature of civil rights claims as either actions on a liability created by statute, or actions for injury to the rights of another. *Compare, e.g., Pauk v. Board of Trustees,* 654 F.2d at 866, *with Almond v. Kent,* 459 F.2d at 203–04. Although section 1983 creates a cause of action for violations of constitutional rights, it is solely a procedural statute which does not itself grant any substantive rights. *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 617–18, 99 S.Ct. 1905, 1915–16, 60 L.Ed.2d 508 (1979). "[O]ne cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything." *Id.,* 441 U.S. at 617, 99 S.Ct. at 1915. The remedy provided by section 1983 is statutory in origin, but the underlying liability it enforces stems primarily from the Constitution. It is thus analytically inaccurate to characterize section 1983 as a liability created by statute.[3] *But cf. Pauk v. Board of Trustees,* 654 F.2d at 861–66. We believe the appropriate focus should not be on the remedy but on

---

**3.** We note moreover that not every state has a statute of limitations applicable to a liability created by statute. Where no such statute exists, a court may be forced to fall back on the very process of case-by-case characterization and analogizing that we have rejected today. *See, e.g., Movement for Opportunity & Equality v. General Motors Corp.,* 622 F.2d at 1242–43, and the text *supra* at 646–647.

the elements of the cause of action, because they most fully describe the essence of the claim.

■ A cause of action is established by showing the existence of a right held by the plaintiff and a breach of that right by the defendant, and is distinct from the remedy sought. *Williams v. Walsh*, 558 F.2d 667, 670–71 (2d Cir.1977). The elements of a section 1983 claim are the deprivation of rights secured by the Constitution or federal law, and action occurring under color of state law. These rights have been described as inhering "in man as a rational being, that is, rights to which one is entitled by reason of being a person in the eyes of the law." *Walden, III, Inc. v. Rhode Island*, 576 F.2d 945, 946 (1st Cir.1978) (quoting *Commerce Oil Refining Corp. v. Miner*, 98 R.I. 14, 199 A.2d 606 (1964)). "In the broad sense, every cause of action under § 1983 which is well-founded results from 'personal injuries.'" *Almond v. Kent*, 459 F.2d at 204. "[T]he cause of action is in essence delictual." *Braden v. Texas A & M University System*, 636 F.2d at 92. We agree with these views. Accordingly, we conclude that every section 1983 claim is in essence an action for injury to personal rights. Henceforth, all section 1983 claims in this circuit will be uniformly so characterized for statute of limitations purposes.[4] To the extent that our prior decisions are

inconsistent with the analysis we adopt today, they are hereby overruled.

### III.

■ The incident giving rise to the cause of action before us allegedly took place on April 27, 1979. Garcia filed suit on January 28, 1982, approximately two years and nine months later. Defendants contended below that the action is governed by the two-year limitations period contained in the New Mexico Tort Claims Act, N.M.Stat. Ann. § 41–4–15(A) (1978), and that Garcia's suit therefore was not timely filed. In a thorough and thoughtful opinion, the district court concluded that section 1983 claims should be uniformly characterized as actions based on a statute. Because there is no New Mexico statute governing actions on a liability created by statute, the court applied the four-year residual limitations period found in N.M.Stat.Ann. § 37–1–4 (1978).

In keeping with our holding in Part II that section 1983 claims are in essence actions to recover for injury to personal rights, we conclude that the appropriate limitations period is that found in N.M.Stat. Ann. § 37–1–8 (1978), which provides that "[a]ctions must be brought ... for an injury to the person or reputation of any person, within three years."[5] Accordingly, Garcia's suit was timely filed.

**4.** The Supreme Court has addressed the issue of uniformity as a goal in determining the proper statute of limitations in civil rights cases by stating that "'in the areas to which § 1988 is applicable Congress has provided direction, indicating that state law will often provide the content of the federal remedial rule. This statutory reliance on state law obviously means that there will *not be nationwide uniformity on these issues.*'" *Board of Regents v. Tomanio*, 446 U.S. at 489, 100 S.Ct. at 1797 (quoting *Robertson v. Wegmann*, 436 U.S. 584, 594 n. 11, 98 S.Ct. 1991, 1997 n. 11, 56 L.Ed.2d 554 (1978)) (emphasis added). We do not read this statement as contrary to our determination that uniformity in the characterization of federal civil rights claims is a commendable goal. Uniformity of characterization will not result in one limitations period being applied to all civil rights cases regardless of the state in which they arose. Rather, the limitations statutes in each state will be reviewed to determine which particular state statute is most applicable to actions for injuries

to personal rights. The resulting period of limitations will thus vary from state to state, depending on state law. *Within* each state, however, the one most appropriate statute of limitations will be applied to all § 1983 claims brought within that state. Other circuits have agreed with us that the interest in attaining this limited uniformity is an important one. *See Pauk v. Board of Trustees*, 654 F.2d 856, 862 (2d Cir.1981); *Walden, III, Inc. v. Rhode Island*, 576 F.2d 945, 947 (1st Cir.1978); *Beard v. Robinson*, 563 F.2d 331, 337 (7th Cir.1977); *Smith v. Cremins*, 308 F.2d 187, 190 (9th Cir.1962).

**5.** In reaching this conclusion, we note the New Mexico Supreme Court's holding in *DeVargas v. New Mexico*, 97 N.M. 563, 642 P.2d 166 (1982), that the limitations period provided in the New Mexico Tort Claims Act governs § 1983 suits filed against state police officers in state court. Although state courts have concurrent jurisdiction with us over § 1983 actions, *see Martinez v.*

The case is remanded for further proceedings consistent with this opinion.

*California,* 444 U.S. 277, 283 n. 7, 100 S.Ct. 553, 558 n. 7, 62 L.Ed.2d 481 (1980), the characterization of a § 1983 claim for statute of limitations purposes is nonetheless a question of federal law, as we have noted supra at 643. Because the conclusion reached in *DeVargas* is at variance with our analysis in this case, we do not adopt it.