Robert Earl JACKSON, Appellant,

v.

John GRIDER, Deputy Director; John Herdt, Superintendent; Les Crabtree, Assistant Superintendent; Ron Champion, Case Manager; Kent Santee, Case Manager; Donald Henry, Case Manager; Iris Jean Sims, Officer; all in their official capacities at Thunderbird Community Treatment Center, Oklahoma City, Oklahoma, Appellees.

No. 60746.

Court of Appeals of Oklahoma, Division 2.

Oct. 23, 1984.

Rehearing Denied Nov. 6, 1984.

Released for Publication by Order of Court of Appeals Nov. 29, 1984.

Robert Earl Jackson, pro se.

Elizabeth J. Bradford, Asst. Atty. Gen., Oklahoma City, for appellees.

MEANS, Presiding Judge.

Plaintiff Robert Jackson appeals from the trial court's sustainment of defendants' demurrer to the petition. The trial court found that Jackson had failed to state a cause of action and that the action was barred by the statute of limitations. Having reviewed the record and applicable law, we affirm.

Jackson is an inmate in the custody of the Oklahoma Department of Corrections. The actions complained of in the instant case occurred at the time when he was incarcerated at the Thunderbird Community Treatment Center in Oklahoma City from 1976 until 1978. He asserts that he was denied due process and equal protection and subjected to cruel and unusual punishment on several occasions. Among his specific complaints, he alleges that the administrators and staff at Thunderbird conspired to deprive him of his educational opportunities.

At the time he was incarcerated at Thunderbird, Jackson was enrolled at the University of Oklahoma where he was working on his masters degree in social work. Jackson alleges that the defendants conspired to deprive him of this educational opportunity and confined him to the Center at times when they knew he had classes and examinations at the University. As a result of these unconstitutional actions, Jackson alleges that he was unable to complete his course work. Jackson was transferred from Thunderbird on January 31, 1978.

Jackson filed his "Petition of Civil Rights Complaint and/or Petition for Declaratory Judgment or Mandamus" on November 29, 1982. He alleged jurisdiction under several state and federal statutes, including the Oklahoma and United States Constitutions, Oklahoma's general tort damage statute, 23 O.S.1981 § 3, and federal civil rights statutes, 42 U.S.C. §§ 1983 and 1985 (1982). Named as defendants were numerous employees of the Department of Corrections who had worked at Thunderbird while Jackson was there, including the director and superintendent as well as Jackson's case worker. For purposes of the defense, the trial court and the defendants treated the action as a civil rights action.

Defendants' demurrer to the amended petition was sustained on the grounds that the action was barred by the statute of limitations and that Jackson had failed to state a cause of action. Jackson has appealed, asserting that because he is pro se, he is held to a less stringent pleading standard. As support for this he cites *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). He further asserts that the applicable statute of limitations is the five-year period found in 12 O.S.1981 § 95 (Sixth). Because we find Jackson's alleged causes of action barred by the statute of limitations, it is not necessary to reach the question of whether his petition states a cause of action sufficient to withstand a demurrer.

■ Initially, we note that Congress did not provide statutes of limitations for the Civil Rights Acts. Since no statute of limitations for actions brought under sections 1983 and 1985 is provided by federal law, federal and state courts apply the most closely analogous state period of limitation. *Board of Regents v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980).

This rule has been uniformly followed in civil rights cases and has been applied by the federal courts interpreting Oklahoma law. *See, e.g., Clulow v. Oklahoma,* 700 F.2d 1291 (10th Cir.1983). However, the Supreme Court has clearly stated that the federal policy behind the civil rights statutes must be considered when there is a choice to be made among various state limitation statutes. As the Court noted in *Occidental Life Insurance Co. of California v. EEOC,* 432 U.S. 355, 367, 97 S.Ct. 2447, 2455, 53 L.Ed.2d 402 (1977), "State legislatures do not devise their limitations periods with national interests in mind." The Court further pronounced that unreasonably short state limitation periods would not be used "if their application would be inconsistent with the underlying policies of the federal statute." *Accord Childers v. Independent School District,* 676 F.2d 1338 (10th Cir.1982). An appropriate limitations period "must be responsive" to the special characteristics of civil rights litigation. "A state law is not 'appropriate' if it fails to take into account practicalities that are involved in litigating federal civil rights claims and policies that are analogous to the goals of the Civil Rights Acts." *Burnett v. Grattan,* ⸺ U.S. ⸺, ⸺, 104 S.Ct. 2924, 2930, 82 L.Ed.2d 36 (1984).

Defendants argue that Jackson's cause of action sounds in tort and is governed by the two-year limitation period of 12 O.S. 1981 § 95 (Third), which governs actions "for injury to the rights of another, not arising on contract." Defendants note that at the very most, Jackson's claims would be governed by the three-year limitation period found in 12 O.S.1981 § 95 (Second), governing actions based "upon a liability created by statute other than a forfeiture or penalty." However, Jackson contends his claims fall within the sixth subsection of section 95 which provides a five-year limitation period for all actions not provided for in the previous subsections.

Jackson filed his petition on November 29, 1982. All of his allegations against the defendants occurred while he was at Thunderbird. He has made no allegations concerning his treatment at any other facility. Because he was transferred from that facility on January 31, 1978, the defendants' actions could have had no effect on him after that date. Even using the three-year limitation period of section 95 (Second), Jackson's cause of action would be barred.

Although there are no cases from Oklahoma state courts applying the Oklahoma statutes, we find highly persuasive the federal cases determining this issue. Prior to Jackson's lawsuit, the Tenth Circuit held that the proper method for analysis of the appropriate limitation period began with a characterization of the facts underlying the plaintiff's claims and a determination of the appropriate limitation period. *Zuniga v. AMFAC Foods, Inc.,* 580 F.2d 380, 383–84 (10th Cir.1978). Under the "characterization" approach, the Tenth Circuit applied both the two-year statute and the three-year statute to civil rights actions, sometimes differentiating between section 1981 actions and those brought under sections 1983 and 1985.

In *Shah v. Halliburton,* 627 F.2d 1055, 1059 (10th Cir.1980), the court applied the three-year limitation period to a section 1981 civil rights action. The court noted that when there is a "substantial question" over which of two conflicting statutes of limitations to apply, "the court should as a matter of policy apply the longer." In choosing the three-year statute, the court stated:

> Because there is a substantial question in this case over whether to apply the Oklahoma two-year statute applicable to torts or the three-year statute applicable to contract actions and actions upon a liability created by statute, we conclude that the district court should have applied the longer statute.

*Accord Childers v. Independent School District,* 676 F.2d 1338 (10th Cir.1982); *Wright v. St. John's Hospital,* 414 F.Supp. 1202 (N.D.Okla.1976).

However, in *Clulow v. Oklahoma,* 700 F.2d 1291, 1299 (10th Cir.1983), the court determined that the two-year tort statute

would apply in a section 1983 action. Holding that the plaintiff's claims "correspond to tort actions for interference with individual rights," the court stated that the two-year statute was not so unreasonably short as to defeat federal policy. *Accord Burgess v. Bryant,* 505 F.Supp. 19 (W.D.Okla. 1980); *Person v. St. Louis-San Francisco Ry.,* 428 F.Supp. 1148 (W.D.Okla.1976); *Seibert v. McCracken,* 387 F.Supp. 275 (E.D.Okla.1974).

The multifarious factual circumstances which give rise to civil rights violations, together with the numerous differences in state limitations periods, produced different results in determining the applicable statutes. As noted earlier, federal courts interpreting Oklahoma law applied both the two-year and three-year statutes, depending on the characterization of underlying facts. In *Garcia v. Wilson,* 731 F.2d 640 (10th Cir.1984), *petition for cert. filed,* —— U.S. ——, 105 S.Ct. 79, 83 L.Ed.2d 28 (1984), the court adopted a uniform characterization for civil rights claims, regardless of the underlying facts involved. Tracing the problems caused by lack of uniformity throughout the circuits, the court noted "it is imperative that we establish a consistent and uniform framework by which suitable statutes of limitations can be determined for all section 1983 claims in this circuit." *Id.* at 643.

The court specifically overruled *Clulow, Shah,* and *Zuniga,* declaring that the problems in characterizing the federal claims through factual distinctions created an uncertainty which "encourages voluminous litigation that is collateral to the merits and consumes scarce judicial resources." The court noted the problems caused by "unequal treatment of similar claims" and concluded, "All of the federal values at issue in selecting a limitations period for section 1983 claims are best served by articulating one uniform characterization describing the essential nature underlying all such claims." *Id.* at 650.

The *Garcia* court refused to characterize the fundamental nature of civil rights claims as actions on a liability created by statute. Instead, the court focused on the elements of the cause of action, determining that civil rights actions are "in essence an action for injury to personal rights." Quoting *Walden, III, Inc. v. Rhode Island,* 576 F.2d 945, 946 (1st Cir.1978), the court stated: "These rights have been described as inhering 'in man as a rational being, that is, rights to which one is entitled by reason of being a person in the eyes of the law.'" *Id.* 731 F.2d at 651.

The Tenth Circuit specifically applied the *Garcia* holding to Oklahoma law in *EEOC v. Gaddis,* 733 F.2d 1373 (10th Cir.1984) (en banc), a section 1981 action. Although the court previously had held that section 1981 actions were governed by the three-year limitation period for actions based upon a statutory liability, the court applied the *Garcia* rationale to claims brought under section 1981. The court noted the similarities in the interests protected and the evil sought to be remedied under both sections 1981 and 1983, and found no significant reason to justify differentiating between them for limitation purposes. Using its characterization of civil rights claims as "actions for injury to personal rights," the court held that the appropriate statute was the two-year limitation period of 12 O.S. 1981 § 95 (Third).

In the instant case, Jackson has stated claims which clearly are analogous to both general tort claims of interference with individual rights and claims based on deprivation of rights protected by statutes. Virtually any civil rights claim is analogous to more than one cause of action in Oklahoma. Thus, either the two-year limitation period or the three-year period could be used. An attempt to determine which claims under Oklahoma law are most nearly comparable to federal civil rights actions is a difficult task with no definitive answer. Although not bound by the Tenth Circuit's reasoning, we find it highly persuasive.

█ A civil rights action is so analogous to both a tort action and an action for deprivation of rights protected by statute that either the two-year or three-year limitation period could reasonably be applied. Furthermore, both the two-year period and the three-year period are sufficiently gen-

erous in time in order to preserve the remedial spirit of federal civil rights actions. The five-year limitation period of section 95 (Sixth), is intended to apply only to those actions which have clearly been overlooked by the legislature in prescribing limitation periods.

 Although section 1983 creates a cause of action for violations of constitutional rights, it is solely a procedural statute which does not in itself grant any substantive rights. *Chapman v. Houston Welfare Rights Organization,* 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979). As the Court stated, "[I]t remains true that one cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything." *Id.* at 617, 99 S.Ct. at 1916. While the remedies provided by the Civil Rights Acts are statutory in nature, the underlying liability is based on the rights of each citizen secured by the Constitution or federal law.

 In the broadest sense, civil rights actions are established by showing the existence of a right held by the plaintiff and a breach of that right by the defendant. A cause of action for deprivation of rights secured by the Constitution or federal law essentially results from the plaintiff's "personal injuries." *Garcia v. Wilson,* 731 F.2d at 651. Accordingly, we conclude that a civil rights claim is in essence an action for injury to personal rights. Under this holding, the appropriate Oklahoma statute is the two-year limitation period for an injury to the rights of another found in 12 O.S.1981 § 95 (Third).

Jackson has failed to present a legal or equitable reason to this court to mandate an application of the five-year period. As his cause of action is barred even by the three-year period of limitation, the trial court's order sustaining defendants' demurrer to the petition is affirmed.

BACON and REIF, JJ., specially concur.

BACON, Judge, specially concurring.

I concur in the majority opinion and the view expressed in the special concurring opinion. Courts have long failed to exercise the intestinal fortitude needed to discourage frivolous lawsuits such as the present one. Both trial and appellate courts are absolutely inundated with meritorious lawsuits pending between tax-paying citizens. The time and expense expended on frivolous lawsuits, such as the present one, make a mockery of the legal system.

In this case, an armed robber, convicted and sentenced to thirty years in prison, sued defendants for not providing him with transportation to his liking to and from school. The robber also complained that he had to pay for some of his own meals while going to school. Such ludicrous complaints do not deserve the time and expense needed to dispose of such suits. This robber must realize that he is a convicted felon. He is not on a taxpayer's scholarship to a state-supported educational institution, but is an inmate at an institution for convicted felons.

I would further assess attorney's fees and costs against this inmate to be collected from any funds he may have, including any institutional accounts.

REIF, Judge, specially concurring.

I concur without reservation in the holding and rationale of the majority decision. I do feel constrained to add that I do not intend my concurrence to reflect any legitimacy to this particular lawsuit or others like it. That is to say, I do not intend to leave the impression that this may have been an otherwise meritorious suit which simply met an unfortunate demise due to the statute of limitations. It is patently frivolous in its conception and premises. Suits such as this have become a plague to the orderly administration of government institutions. They present vexation and harassment of government officials, as well as drain already strained legal, financial, and personnel resources.

I will not lend the prestige of this court to aid, encourage, and tolerate such suits.