Bassett v. Bassett.

## ELLEN J. BASSETT ET AL. Ex'rs, etc.

### v.

## ALICE E. BASSETT.

1. HUSBAND AND WIFE—ENTICING HUSBAND AWAY.—A wife has, in this State, a right of action against any one who maliciously entices her husband to separate himself from her, whereby she is deprived of his society, affection, protection and support.

2. STATUTE OF LIMITATIONS—PERSONAL INJURY.—The cause of action for an injury to the person which is barred by the Statute of Limitations of two years is limited to a direct physical injury.

3. FIVE YEARS LIMITATION.—An action by a wife for enticing her husband away and depriving her of his society, is governed by the Statute of Limitations of five years.

4. EVIDENCE THAT THE WIFE WAS NOT DEPRIVED OF ANY LOVE.—In such an action brought by the wife against her father-in-law, evidence by the defendant that his son was married to the plaintiff while intoxicated, and that he had never had any affection for her before or after the marriage, was admissible in mitigation of damages, and to prove defendant's theory that the husband voluntarily left the plaintiff.

APPEAL from the Circuit Court of Fayette county; the Hon. JESSE J. PHILLIPS, Judge, presiding. Opinion filed November 24, 1886.

Action on the case, by the appellee against George W. Bassett, the father of her husband, charging him with wrongfully and maliciously enticing her said husband to separate himself from her, whereby she was deprived of his society, affection, protection and support, for which she seeks to recover damages. The general issue and the Statute of Limitations of two years were pleaded, to which last plea a demurrer was sustained. Upon trial a verdict and judgment were rendered for $3,000 and the defendant below appealed to this court, pending which he died, and his executors were substituted as parties appellants in this court.

Messrs. ASHCRAFT & STILLMAN, for appellants; that the action can not be maintained, cited 2 Shars. Bl. Com. 142; 1 Addison on Torts, § 51.

The evidence offered as to the marriage and the absence of love on the husband's part was admissible: Schouler on Domestic Relations, 57; Cooley on Torts, 224; Dance v. McBride, 43 Ia. 624; Sedgwick on Damages, 547; 1 Greenleaf on Evidence, § 102; Coleman v. White, 43 Ind. 429; Harter v. Crill, 33 Barb. 283.

Messrs. FARMER & BROWN and Messrs. CASEY & DWIGHT, for appellee; that the action was maintainable, cited Emerson v. Clayton, 32 Ill. 493; Hayner v. Smith, 63 Ill. 430; Hennies v. Vogel, 66 Ill. 401; Cooley on Torts, 225; Martin v. Robson, 65 Ill. 129; Westlake v. Westlake, 34 Ohio, 621.

PILLSBURY, J. The first objection urged against the judgment in this case raises the question whether a wife can maintain an action in her own name against one who wrongfully induces the husband to put her away or to desert her. By the common law upon marriage, the husband and wife became one person in law, and the husband was that person. The legal existence of the woman was suspended during marriage, being treated as incorporated or consolidated into that of the husband. If she had personal estate it became the absolute property of the husband upon his reducing it to possession, and he became master of the profits of her real estate during coverture; and if the estate was one of inheritance, upon birth of living issue he became a tenant for life of the lands. If she was injured in her person or property, she was without redress by action, unless her husband would join with her. She could make no valid contract. He could not grant anything to her or enter into any covenant with her, for the grant would be to suppose a separate existence, and the covenant would be with himself. 1 Blacks. Com. 443. For a slight battery of the wife the husband could recover damages by joining the wife, but if it were so severe as to deprive him of her company and assistance for any time, he had his action in his own name, *per quod consortium amisit*, in which he recovered satisfaction. An injury to the wife was treated by the law as to him only. He was allowed to inflict moderate chastisement

upon her, if, in his judgment, it became necessary to keep her in proper subjection and in the line of duty.   Indeed, at the common law, the woman upon marriage became as near a legal nonentity as any human being could well be, unless it were one who had abjured the realm or was banished, and therefore dead in the law.   But then she could reflect that " the disabilities which the wife lies under are for the most part intended for her protection and benefit, so great a favorite is the female sex of the laws of England."   1 Blacks. Com. 444.

. We believe, however, that the common law did · recognize the right cf the wife to the protection, support and society of the husband, but as an injury to her personal rights was in law an injury to him only, and she having no legal standing in a court of law to redress her wrongs or enforce her rights, where her husband saw proper to put her away or to abandon her, she could not well sue, joining him, to recover for the injury which he caused, although he may have been influenced by another to do the wrongful act.   If he failed to support her she might use his credit for the necessaries of life, but beyond this it is doubtful if the law allowed her any remedy for the violation of the right to the society or support of the husband.   Although it was thought by some of the judges in Lynch v. Knight and wife, 9 H. of L. 577, that in an action of slander, charging adultery by the wife, in consequence of which the husband abandoned her, she, in an action joining the husband, might allege and prove as special damages the loss of the conjugal society of her husband.   But what effect has the legislation of this State upon these doctrines of the common law? Our statute relating to husband and wife, Ch. 68, R. S. 1874, provides that a married woman may in all cases sue and be sued without joining her husband with her, to the same extent as if she was unmarried; and an attachment or judgment in such action may be enforced against her as if she were a single woman.   When husband and wife are sued together she may defend in her own right, and when either deserts the other the one deserted may prosecute or defend in the name of the other to the same extent as he or she could do if personally present in court.   The husband is no longer liable for the

torts of the wife, and neither is liable for the debts of the other except as provided for in the statute. The wife is entitled to her own earnings, and may make contracts (except entering into partnership business), with like effect as if a *feme sole*. She may own real and personal estate, and manage, sell and convey the same to the same extent as the husband can his property; and if he unlawfully interferes with her property the same remedy is open to her for redress as if they were not married. The expenses of the family and the education of the children are chargeable upon the property of both in favor of creditors, and in relation thereto they may be sued jointly or separately. By the act in relation to dower, the tenancy by the curtesy of the husband in the wife's real estate is abolished, and each takes the same interest in the lands of the other—a dower interest. We can but think that the effect of this legislation is to destroy the unity of the husband and wife in one person as existing at common law respecting the personal and property rights of the wife. She now loses none of the "rights" pertaining to natural persons, that of personal security, personal liberty and of private property, by marriage, to any greater extent than does the man.

Regarding these absolute rights they are placed upon an equality. The same remedies are open to each to enforce those rights or to redress any injury arising from their violation. The husband is not now required at his peril to keep a bridle upon the tongue of his wife, or respond in damages if she use it to the injury of the reputation of her neighbors. He is to answer for his own torts only, and she for hers. If she be injured in her person or estate the damages accrue to her and she alone can sue. Thus, under the Married Woman's Act, as it is called, of 1861, it was held, in C., B. & Q. R. R. Co. v. Dunn, 52 Ill. 260, that a wife who was injured by a railroad must sue alone, although that statute was far less comprehensive in its provisions concerning the rights of married women than our present one. This has been followed by other cases affirming the doctrine there announced, and in an action to recover rent upon a lease of the wife's land, it was held error, in Hayner v. Smith, 63 Ill. 430, to join the husband in the

Bassett v. Bassett.

suit as a party plaintiff.  If she be injured in her reputation or in any of her personal rights, the same rule would undoubtedly be applied.  The injury no longer accrues to the husband, but is personal to herself, and the statute gives her the right to sue, in all cases, in her own name.  The statute has clothed her with a legal existence, or perhaps a better expression would be, places her under no legal disabilities as to personal and property rights because of her marriage, and leaves her endowed with the same rights and remedies to enforce them that the law confers upon the husband.  It follows from this, that if the wife still has a right to the support, comfort and society of the husband free from the unlawful interference of outside parties, for any wrongful deprivation of that right she ought to find a remedy in the law.  The reason of the rule existing at common law which deprived her of the right to sue in her own name has ceased, and the rule itself ought to go with it.  To me, personally, it seems there never was any valid reason for holding that the loss of the *consortium* of the husband was any less an injury to the wife than the loss of that of the wife was to the husband.  Indeed it would appear from her state of dependence upon him, that her loss was infinitely greater, yet the common law gave the husband his action against any one who wrongfully destroyed his home by corrupting his wife and enticing her to leave him.  That our law now recognizes an equal right in the husband and wife to the affection, society and companionship of the other, we have no doubt, and for a destruction of this right we hold the statute gives an equal remedy to the injured one.  This was so held in Westlake v. Westlake, 34 Ohio St. 621, under the Married Woman's Act of that State, which is no broader than ours, in a case like the present, and the opinion is a well-considered one and worthy of great respect.  In a similar action, brought in the City Court of Brooklyn, Brennan v. Paesch, 7 Abb. N. C. 249, a similar conclusion was reached by Nelson, C. J., in a very clear and satisfactory opinion.

It is next objected that the court erred in sustaining the demurrer to the Statute of Limitations of two years.  The section of the statute upon which the plea is based provides

that "Actions for damages for an injury to the person, or for false imprisonment, malicious prosecution, or for a statutory penalty, or for abduction, or for seduction, or for criminal conversation, shall be commenced within two years." Applying the familiar principle that the statute does not bar a cause of action unless it comes clearly within its provisions, we are of the opinion that the section relied upon is not broad enough to include the present case. The cause of action for an injury to the person which is barred in two years is limited to a direct physical injury to the person. If it were intended to include all injuries to personal and relative rights, the legislature would not have considered it necessary in the same act to provide specially for a period of time in which an action should be brought for many of the injuries to such rights. Thus actions to recover damages for slander and libel, false imprisonment, malicious prosecution, abduction, seduction and criminal conversation, are expressly provided for, showing the clear intent of the legislature to limit "injuries to the person" to those of a physical nature. This case is one of those not specially provided for, and would therefore seem to be governed by the fifteenth section of the act making five years the limitation.

It is next urged that the court erred in excluding evidence offered by the defendant below. It would extend this opinion to an unreasonable length to notice in detail the several items of offered evidence that were rejected by the court upon objection, and we shall confine ourselves to a general view of its character and its competency. It was shown by the evidence that the husband was addicted to the use of intoxicants, and frequently would have drunken sprees lasting several days, and at such times would become reckless and incapable of exercising his judgment in the ordinary affairs of life. That at such times he would talk and act like a crazy man; would leave his business and go to St. Louis and other places, without leaving any word with his friends or informing them of his whereabouts. That at such times his father would send parties to find him and bring him home, when he would wait upon him and care for him until again sober. That when

sober he was a high-minded gentleman and an excellent physician, attending strictly to his business and enjoying the respect and esteem of all who knew him.    The evidence further shows, that on the evening of July 4, 1881, before his marriage, he commenced drinking very heavily, and the next morning about six o'clock, was seen in a buggy with the plaintiff driving out of the city of Vandalia.    The next seen of them they were in Effingham on the morning of the 5th of July, where a license was procured and they were married in the office of the county clerk.    They did not return to Vandalia until the evening of the 6th of July and remained in the hotel over night.    On the morning of the 7th, his father, learning, from the plaintiff, of the marriage, and where his son then was, went to the hotel, and finding him still drunk, took him home.    The evidence for the plaintiff tends to show that at this time the father was exceedingly angry because of his son's marriage, and most emphatically declared that they should never live together, and that the plaintiff should never cross the threshold of his home.    It was claimed by the defendant below that his son had never kept company with the plaintiff, and had no affection for her; that the plaintiff was a designing woman and took the opportunity when the son was in a drunken condition, and not capable of exercising his reason, to entrap him into such marriage, and that after the marriage, and when he came to realize his position, the abandonment of the plaintiff by him was purely voluntary upon his part, in nowise affected by any advice or solicitation of the defendant.    To support this theory the defendant offered to prove that previous to the marriage his son never kept company with the plaintiff nor paid her any such attention as indicated any love for her, or any marriage contract between them, and that at the time he was married he was in such a state of intoxication as not to know what he was about, and so continued until he was taken home by his father and cared for until he was sober.    Upon objection the court excluded the evidence offered, and in this we think error was committed. We are of the opinion that this evidence was admissible upon the ground, first, that it should be considered in mitigation

of damages. The plaintiff claims that by the act of defendant she was deprived of the love and affection of her husband, for which she claims damages. Marriage, of itself, can not be considered as conclusive proof of that mutual regard and love which should be entertained by husband and wife, and where one of them seeks to recover damages for the loss of love and affection, we know of no case that goes so far as to deprive the defendant of the right of showing the real feelings of the other to the plaintiff. So it has been held in cases brought by the husband for criminal conversation, that evidence as to the terms upon which the plaintiff and his wife lived together was competent in mitigation of damages: Harter v. Crill, 33 Barb. 283; Palmer v. Crook, 7 Gray, 418; or that the plaintiff and his wife were both adulterers before her connection with the defendant: Rea v. Tucker, 51 Ill. 116; or that the marriage was not one of affection and had not ripened into love before the seduction: Dance v. McBride, 43 Iowa, 624; Coleman v. White, 43 Ind. 420. We are unable to see why the same principle should not apply in this case. The plaintiff could undoubtedly show in aggravation of damages, that she and her husband entertained the highest degree of love for each other; that their happiest moments were when in each other's society; that such affection for each other had long existed, and would have continued but for the wrongful acts of the defendant. What is competent for her to show in aggravation of damages, the contrary thereof is equally competent for the defendant to show in mitigation. The man who maliciously invades a home where love reigns supreme, and conjugal happiness is undisturbed, and destroys that home by alienating the love of either husband or wife from the other, and causes a separation between them, inflicts a much more serious injury and deserves severer punishment in the way of heavy damages than if no such love and happiness ever entered therein, or having once existed, were impaired or destroyed without his aid. So, here, if this marriage took place while the husband was in a maudlin state of intoxication, and from such cause was not able to understand what he was about to do, and was not the result of any affectionate regard he had

Bassett v. Bassett.

for the plaintiff, she surely would not be entitled to recover damages for loss of affection that never existed. Second, the proposed evidence was competent to be considered upon the question made that the husband voluntarily abandoned the plaintiff without the advice of the defendant. The question whether he did, lay at the foundation of plaintiff's case; and to deprive the defendant of the right to show that the marriage was consummated when his son was in an almost unconscious condition, but for which it would not have occurred, as he had no affection for the plaintiff, was to take from the jury one of the strongest circumstances corroborative of the other testimony tending strongly to show that the desertion was not the result of the action of the defendant, but was voluntary upon the part of the husband. If this marriage was brought about as claimed by the defendant, and under the circumstances sought to be proved, it would tend very strongly to corroborate the testimony of the defendant and the son, that the defendant never advised or encouraged the separation of the husband and wife. The instruction given that the plaintiff was entitled to recover damages in this action for the loss of support of the child born to them was improper, and is substantially conceded to be so by counsel. How much the damages were enhanced by this direction we can not of course say, but it allowed a latitude to the jury in assessing damages that might work great injury to the defendant. The objections taken to the other instructions seem to be rather to form than substance, and as such objections can be avoided upon another trial, if the attention of the court is directed to them, we will not further notice them. For the reason stated, the judgment will be reversed and the cause remanded.

Judgment reversed.