**Vickie SHORTERS, et al., Plaintiffs,**

**v.**

**CITY OF CHICAGO, et al., Defendants.**

**No. 85 C 6078.**

United States District Court,
N.D. Illinois, E.D.

Sept. 6, 1985.

Kenneth N. Flaxman, Chicago, Ill., for plaintiffs.

Robert W. Fioretti, Senior Atty. Supervisor, Ira M. Kleinmuntz, Ass't Corp. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

On July 2, 1985 Vickie Shorters ("Shorters") and Delores Clark ("Clark") sued the City of Chicago ("City") and Chicago police officer George Weir ("Weir") under 42 U.S.C. § 1983 ("Section 1983"), seeking damages for an alleged violation of plaintiffs' civil rights in August 1982. Defend-

ants then moved under Fed.R.Civ.P. ("Rule") 12(b)(6) to dismiss plaintiffs' Complaint, in part on the grounds it is barred by the applicable statute of limitations.[1] For the reasons stated in this memorandum opinion and order, the Complaint survives that motion.

### Facts [2]

In the early morning hours of August 5, 1982 plaintiffs, who were riding in an automobile owned by Clark, stopped to purchase hamburgers at a White Castle restaurant at 111th and State Streets in Chicago. Shorters entered the restaurant while Clark remained in the car. While waiting for Shorters to return, Clark was approached by a restaurant security guard who told her she was parked in a restricted area and would have to move her car. After some discussion Clark agreed to do so.

As Clark was moving the car Weir arrived on the scene, ordered Clark to stop the car and asked to see her license. When Clark produced her license, Weir reached inside the car, took the license from her and also removed the keys from the ignition switch. Weir then opened the car door, removed Clark from the car and placed her in his squad car, in the meantime subjecting her to verbal abuse. Shortly thereafter Shorters emerged from the restaurant and approached Weir to ask about what had happened. Weir responded "Do you want to go to jail too?," twisted Shorters's arm behind her back and placed her under arrest. Clark was later charged

with battery, while both Shorters and Clark were charged with disorderly conduct. After plaintiffs had appeared several times in the Circuit Court of Cook County all charges against them were dropped.

### Statute of Limitations

Defendants' motion to dismiss invokes the Supreme Court's definitive ruling in *Wilson v. Garcia,* — U.S. ——, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). *Wilson,* 105 S.Ct. at 1949 characterizes Section 1983 claims collectively as "[g]eneral personal injury actions, sounding in tort,"[3] and *id.* at 1947 mandates the selection, "in each State, [of] the one most appropriate statute of limitations for all § 1983 claims." That statute in Illinois, defendants argue, is Ill. Rev.Stat. ch. 110, ¶ 13–202 ("Section 13–202"[4]):

> Actions for damages for an injury to the person, or for false imprisonment, or malicious prosecution, or for a statutory penalty, or for abduction, or for seduction, or for criminal conversation ... shall be commenced within two years next after the cause of action accrued....

Because the events giving rise to plaintiffs' claim occurred in August 1982, defendants claim the July 1985 Complaint was filed out of time.

Plaintiffs counter with two arguments:

1. Under the reasoning of *Wilson,* the Illinois statute of limitations most

---

1. City's motion also sought its dismissal under *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978) and *Strauss v. City of Chicago,* 760 F.2d 765 (7th Cir.1985). Because the statute of limitations defense had the potential to defeat the entire Complaint, this Court directed the parties to limit their initial briefing to that issue. Consequently City's *Monell*-based arguments remain to be briefed and decided.

2. As always with respect to a motion to dismiss, the well-pleaded factual allegations of the Complaint are taken as true, with all reasonable factual inferences drawn in plaintiffs' favor. *Wolfolk v. Rivera,* 729 F.2d 1114, 1116 (7th Cir.1984). That approach of course involves no actual findings of fact.

3. As the text of this opinion later reflects, that is one of several characterizations, each a bit different from the others.

4. As this Court has noted in other opinions, the Illinois General Assembly uses the "§ " designation in its legislative enactments (here the 1982 Code of Civil Procedure). Though the Smith-Hurd publishers of the Illinois Revised Statutes have recently changed from a "§ " to a "¶" symbol (hence the full statutory citation form in the text), this Court will adhere to the General Assembly's continuing usage (by spelling out "Section") when this opinion speaks of individual provisions without including their chapter references.

appropriate for Section 1983 claims is not Section 13–202 but rather Ill.Rev.Stat. ch. 110, ¶ 13–205 ("Section 13–205"), which prescribes a five-year limitations period for "all civil actions not otherwise provided for."

2. Even if *Wilson* were instead to cause Section 13–202 to supply the applicable limitations period, plaintiffs should be afforded a reasonable time after *Wilson* to file actions (a) that would have been timely under what had been thought a five-year limitations period (adopted by our Court of Appeals in *Beard v. Robinson,* 563 F.2d 331 (7th Cir.1977), *cert. denied,* 438 U.S. 907, 98 S.Ct. 3125, 57 L.Ed.2d 1149 (1978)) but (b) that would become untimely under a post-*Wilson* two-year period.

This opinion considers those arguments in turn.

*1. Applicable Illinois Limitations Period*

*Wilson* teaches a twofold inquiry:

1. a single characterization of *all* Section 1983 claims—for which purpose a federal standard applies; and

2. selection of a single state limitations statute—for which purpose state law necessarily gives content to the state's own statutes.

Because of the double aspect of that inquiry, and because of the two quite different sources that must be drawn upon, special care must be taken to avoid the trap of assuming the same or similar words necessarily have the same meaning in the two contexts—they may, of course, but they need not.

This opinion turns then to the first question: the precise meaning of the *Wilson* characterization. *Wilson,* 105 S.Ct. at 1948 speaks of Section 1983 "as conferring a general remedy for injuries to personal rights." On the following page it refers to "all § 1983 actions as involving claims for personal injuries," to "[g]eneral personal injury actions, sounding in tort" and to "§ 1983 claims [as] best characterized as personal injury actions." Certainly Justice

Stevens (speaking for the Court, over a single dissent) was not shifting the intended meaning of his language in such a brief compass. Slight variations in locution do not import any change in substance.

Because this Court is already aware of what the second-step (state-law) inquiry later in this opinion will bring, it notes *Wilson* gave several strong clues as to what the shorthand terms "injuries to personal rights" and "personal injuries" embrace. *Wilson, id.* at 1948 said:

As we have noted, however, the § 1983 remedy encompasses a broad range of potential tort analogies, from injuries to property to infringements of individual liberty.

It went on (*id.*) (emphasis in original):

The Constitution's command is that all *"persons"* shall be accorded the full privileges of citizenship; no *person* shall be deprived of life, liberty, or property without due process of law or be denied the equal protection of the laws. A violation of that command is an injury to the individual rights of the person.

And it quoted with favor (*id.*) from *Almond v. Kent,* 459 F.2d 200, 204 (4th Cir. 1972):

In essence, § 1983 creates a cause of action where there has been injury, under color of state law, to the person or to the constitutional or federal statutory rights which emanate from or are guaranteed to the person. In the broad sense, every cause of action under § 1983 which is well-founded results from "personal injuries."

Finally it said (*id.* at 1948–49) (footnotes omitted):

The rights enforceable under § 1983 include those guaranteed by the Federal Government in the Fourteenth Amendment: that every person within the United States is entitled to equal protection of the laws and to those "fundamental principles of liberty and justice" that are contained in the Bill of Rights and "lie at the base of all our civil and political institutions." These guarantees of liberty are among the rights possessed by

every individual in a civilized society, and not privileges extended to the people by the legislature.

What all this means, of course, is that the scope of Section 1983 is not at all limited to the whippings, lynchings and worse (see *id.* at 1947) that were the "specific historical catalyst" for its 1871 enactment. Such direct physical injury does not mark the outer boundaries of Section 1983 claims. *Wilson* plainly teaches its references to "personal injury" and "injuries to personal rights" encompass not only such injuries (of which the sheriff's racially-motivated fatal beating of a prisoner in the seminal case of *Screws v. United States,* 325 U.S. 91, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945) is the archetype) but also the far wider range of harms that this and all other federal courts regularly treat with in Section 1983 litigation.

That leads then to the second level of inquiry: What Illinois limitations statute provides the best fit to the total set of federal harms encompassed in Section 1983? And once again, the search is *not* simply for the Illinois statute that *sounds* most like the shorthand phrases *Wilson* used to describe the broad range of federal torts, for the test must be a commonality of *substantive content* and not mere similarity of *language.*

There is reason to emphasize that difference in the nature of the quest. In purely superficial terms Section 13–202, with its reference to "injury to the person," has a deceptive similarity to *Wilson*'s "personal injury" (or perhaps even *Wilson*'s "injuries to personal rights"). But it is crystal clear Illinois courts (which are of course the masters of the meaning of state statutes) have never given the phrase "injury to the person" a comparably broad scope.[5]

Almost exactly a century ago *Bassett v. Bassett,* 20 Ill.App. 543, 547–48 (4th Dist. 1886) dealt with a wife's damages claim against her husband's father for having enticed her husband to separate himself from her. *Bassett* defined the limited reach of the direct precursor to Section 13–202:

> It is next objected that the court erred in sustaining the demurrer to the Statute of Limitations of two years. The section of the statute upon which the plea is based provides that "Actions for damages for an injury to the person, or for false imprisonment, malicious prosecution, or for a statutory penalty, or for abduction, or for seduction, or for criminal conversation, shall be commenced within two years." Applying the familiar principle that the statute does not bar a cause of action unless it comes clearly within its provisions, we are of the opinion that the section relied upon is not broad enough to include the present case. The cause of action for an injury to the person which is barred in two years is limited to a direct physical injury to the person. If it were intended to include all injuries to personal and relative rights, the legislature would not have considered it necessary in the same act to provide specially for a period of time in which an action should be brought for many of the injuries to such rights. Thus actions to recover damages for slander and libel, false imprisonment, malicious prosecution, abduction, seduction and criminal conversation, are expressly provided for, showing the clear intent of the legislature to limit "injuries to the person" to those of a physical nature.

*Bassett* concluded the plaintiff's action was a "civil action not otherwise provided for" and was therefore covered by the residual five-year limitations period under the predecessor to Section 13–205.

That reading has persisted to the present day. Just a decade ago *Mitchell v. White Motor Co.,* 58 Ill.2d 159, 161, 317 N.E.2d 505, 506 (1974) (emphasis in original) upheld a line of Illinois Appellate Court cases (beginning with *Bassett* ) that had applied

---

**5.** Parenthetically it may be observed "injury to the person" in Section 13–202 does not include injury to a person's reputation or privacy inter-

ests. Such actions are subject to the one-year limitations period set out in Ill.Rev.Stat. ch. 110, ¶ 13–201.

the residual five-year limitations period in cases:

> where a plaintiff's cause of action arises from a personal injury to a third person but does not involve a *direct physical injury to the person* of the *plaintiff*....

*Mitchell* (*id.* at 162, 317 N.E.2d at 506–07) acknowledged such consequential damage actions are, in many jurisdictions, encompassed for limitations purposes in the term "for injury to the person" or "for personal injury." But *Mitchell* went on to explain the Illinois rule was to the contrary (*id.* at 162–63, 317 N.E.2d at 507):

> [O]ur appellate courts have held that this language ["injury to the person"] in our limitation statute applies only to direct personal injury to the plaintiff. Our legislature has long acquiesced in this interpretation of this language. We find the inaction of our legislature in the face of the judicial construction which has been given to the meaning of the statute more persuasive than the decisions from the other jurisdictions.... We think that it is the nature of the plaintiff's injury rather than the nature of the facts from which the claim arises which should determine what limitations period should apply. Where, as here, plaintiff has suffered no direct physical or mental injury the two-year statute is inapplicable.

Three years later in 1977 the specific holding of *Mitchell* (but *not* the principle just quoted) was overruled by the predecessor to Ill.Rev.Stat. ch. 110, ¶ 13–203 ("Section 13–203"):

> Actions for damages for loss of consortium or other actions deriving from injury to the person of another ... shall be commenced within the same period of time as actions for damages for injury to such other person.

That limited legislative action betokens continued acquiescence in the Illinois courts' general construction of "injury to the person" as used in Section 13–202, just as it reflects a specific legislative choice to change that rule for the specific kind of action at issue in *Mitchell.* Section 13–203 leaves untouched (or more accurately, really fortifies) the judicial construction of Section 13–202 as announced in *Bassett,* reconfirmed over the next nine decades and given Illinois Supreme Court sanction in *Mitchell.*

That case-law and statutory history makes two things plain:

1. Illinois courts would apply the Section 13–202 two-year limitations period to any action for direct physical (or perhaps also "mental") injury encompassed by a Section 1983 claim.

2. But those same courts would look elsewhere for a limitations period to apply to the many kinds of violations of personal rights asserted in the host of Section 1983 cases that involve no such direct physical (or mental) injuries.

Such a limited utility of the two-year statute is not enough to satisfy *Wilson,* which requires this Court to identify a single Illinois limitations period for *all* Section 1983 claims (105 S.Ct. at 1947) (footnote omitted):

> Although the need for national uniformity "has not been held to warrant the displacement of state statutes of limitations for civil rights actions," *Board of Regents v. Tomanio,* 446 U.S. [478] at 489, 100 S.Ct. [1790], at 1797 [64 L.Ed.2d 440 (1980)], uniformity within each State is entirely consistent with the borrowing principle contained in § 1988. We conclude that the statute is fairly construed as a directive to select, in each State, the one most appropriate statute of limitations for all § 1983 claims. The federal interests in uniformity, certainty, and the minimization of unnecessary litigation all support the conclusion that Congress favored this simple approach.

In light of the confined scope of the Section 13–202 concept of "injury to the person," as contrasted with *Wilson*'s much broader concept of "injury to personal rights" or "personal injury," this Court cannot conclude Section 13–202 supplies "the one most appropriate statute of limitations for *all* § 1983 claims." And no other specific Illinois limitations provision comes

any closer to fitting the bill.[6] With the possibility of dividing a claim into its component parts for statute of limitations purposes having been foreclosed by *Wilson,* this Court has determined the only satisfactory (and permissible) response to the *Wilson* directive is to select, as the single statute of limitations most appropriate for all Section 1983 claims, the Section 13–205 category of "all civil actions not otherwise provided for"—a five-year statute.[7]

■ This careful examination of Illinois law in light of the holding and reasoning of *Wilson* [8] has thus led to the conclusion "the one most appropriate statute of limitations for all § 1983 claims" in Illinois is Section 13–205, prescribing the same five-year period federal courts in Illinois have previously applied to such claims.[9] From this it follows Shorters' and Clark's Complaint, filed

less than three years after the occurrence of the events giving rise to their claims, was timely filed.

## 2. Reasonable Period To File Post-Wilson

What has already been said suffices to defeat defendants' statute of limitations defense. That makes dictum any discussion of plaintiffs' second argument. Nonetheless, against the possibility of a future appeal, it may be worth taking a brief look at that alternative ground for denial of defendants' motion.

Plaintiffs' second contention assumes arguendo *Wilson* requires application of the Paragraph 13–202 limitations period. That assumption then requires the examination of two questions:

6. Illinois adheres to the principle that a statute of limitations bars only actions coming clearly within its terms. See *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.,* 16 Ill.App.3d 709, 712–13, 306 N.E.2d 549, 552 (1st Dist.1973), *rev'd in part on other grounds,* 61 Ill.2d 129, 334 N.E.2d 160 (1975).

7. This result is substantially of a piece with that of *Mismash v. Murray City,* 730 F.2d 1366 (10th Cir.1984) (en banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 2111, 85 L.Ed.2d 476 (1985). *Mismash* was decided by the Court of Appeals the same day as *Garcia v. Wilson,* 731 F.2d 640 (10th Cir.1984) (en banc), which was in turn affirmed by the *Wilson v. Garcia* Supreme Court decision that has been the focus of this opinion. *Mismash,* 730 F.2d at 1367 held:

> No Utah statute of limitations is expressly applicable to actions for injury to the rights of another. Under Utah law, personal torts other than those set forth in Utah Code Ann. § 78–12–29(4) (1953) are governed by the four year statute of limitations which applies to "[a]n action for relief not otherwise provided for by law," *id.* § 78–12–25(2). *See, e.g., Matheson v. Pearson,* 619 P.2d 321 (Utah 1980). Accordingly, we conclude that all section 1983 claims brought in federal court in Utah are subject to the four-year limitations period provided in Utah Code Ann. § 78–12–25. Under this statute, Mismash's suit was timely filed and the judgment for defendants must be reversed.

Utah Code Ann § 78–12–29(4) sets a one-year limitations period applicable to actions for libel, slander, assault, battery, false imprisonment or seduction. It is worth noting the petition for certiorari in *Mismash* was held under considera-

tion while *Wilson* was awaiting decision, and it was then denied April 22, 1985, five days after the Supreme Court decided *Wilson.* Though we are taught no inference is to be drawn from denials of certiorari, under the circumstances (where the Supreme Court did not vacate and remand *Mismash* for reconsideration in light of *Wilson,* as it often does in comparable situations) it seems fair to conclude the Court viewed *Mismash* as consistent with *Wilson.*

8. Several post-*Wilson* cases have assumed without discussion that the two-year Illinois statute applies to Section 1983 claims (just as this Court would likely have done at first blush, seduced by the surface similarity between the *Wilson* language and that of Section 13–202). See, e.g., *Moore v. Floro,* 614 F.Supp. 328, 330 n. 1 (N.D. Ill.1985); *West v. County of Will,* No. 84 C 7540, slip op. at 3 (N.D.Ill. June 6, 1985); *Winston v. Sanders,* 610 F.Supp. 176, 177 (C.D.Ill.1985). Our Court of Appeals has only mentioned the issue in passing while adopting a six-month limitations period in an altogether different context. *Smith v. City of Chicago,* 769 F.2d 408, 411 (7th Cir.1985). *Bailey v. Faulkner,* 765 F.2d 102 (7th Cir.1985) was decided under Indiana law and made no reference to Illinois limitations law.

9. We seem to have come full circle. It will be recalled that in *Beard v. Robinson* our Court of Appeals, though indulging a very different line of analysis (now rejected by *Wilson,* 105 S.Ct. at 1948), had arrived at the same destination: the five-year statute now embodied in Section 13–205. *Beard* had considered Section 1983 actions to be akin to statutory actions and hence "civil actions not otherwise provided for."

1. Whether the two-year limitations period is to be applied retroactively to cases that were timely filed before *Wilson* but remain undecided.

2. Whether a Complaint filed (a) shortly after *Wilson* and (b) more than two years after the cause of action accrued is barred, even though it would have been timely filed under the pre-existing limitations rule.

Obviously an affirmative answer to the first of those questions moots the second. Conversely, a negative answer to the first leaves open the second.

True enough, plaintiffs have not addressed the first question. Nonetheless defendants implicitly concede a "no" answer on the authority of *Jackson v. City of Bloomfield,* 731 F.2d 652, 655 (10th Cir. 1984) (decided en banc the same day the Court of Appeals decided *Wilson,* 731 F.2d 640) and its application of the factors bearing on nonretroactivity set out in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355–56, 30 L.Ed.2d 296 (1971).[10] But the *Jackson* analysis, focusing (as it had to) on New Mexico and Tenth Circuit law, lacks direct bearing on cases arising in the context of Illinois and Seventh Circuit law.[11]

■ In the latter respect, both Judge Decker's July 23, 1985 decision in *Moore v. Floro,* at 330–334 and Judge Sharp's earlier decision in *Winston v. Sanders,* 610 F.Supp. at 178–79 apply the *Chevron Oil* factors in light of *Beard* and the clear five-year limitations rule it had prescribed in Illinois for nearly eight years before

*Wilson.* Each of *Moore* and *Winston* concluded—soundly in this Court's view—a *Wilson*-mandated reduction of the limitations period for Illinois-based Section 1983 actions does not retroactively bar claims that had been timely when filed under *Beard.*

■ That then poses the second question: whether a complaint filed after *Wilson* was decided, yet outside the two-year limitations period, must be measured by the *Wilson*-derived rule. For that purpose the *Chevron Oil* analysis underlying the holdings of *Winston* and *Moore* might well be repeated. Here, as in those cases:

1. Plaintiffs are likely to have relied on the clear rule set out by *Beard.*

2. Nonretroactivity would not seriously jeopardize the policies of uniformity, certainty and minimization of unnecessary litigation, while it would serve the broad remedial purposes of Section 1983.

3. Retroactive application would impose a burden of inequity on plaintiffs, particularly given the prior solidity of the *Beard* rule.

That *Chevron Oil* analysis necessarily assumes plaintiffs filed suit with reasonable promptness after *Wilson,* for neither the efficiency considerations underlying *Wilson* nor the equities are well served by allowing a plaintiff simply to ignore an otherwise valid change in the law.

In a sense, though, such a detailed *Chevron Oil* approach is really subsumed within the rule succinctly stated by the Supreme Court over 100 years ago in *Terry v. An-*

---

**10.** *Chevron Oil,* 404 U.S. at 106–07, 92 S.Ct. at 355–56 (citations omitted) identified three factors bearing on nonretroactivity:

First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied ... or by deciding an issue of first impression whose resolution was not clearly foreshadowed.... Second, it has been stressed that "we must ... weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." ... Finally, we have weighed the inequity imposed by retroactive applica-

tion, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

**11.** For much the same reason *Smith v. City of Pittsburgh,* 764 F.2d 188, 194–97 (3d Cir.1985) is really not helpful here. In reaching a result opposite to that in *Jackson, Smith* emphasized the first *Chevron Oil* factor and the fact that Third Circuit limitations law for Section 1983 purposes was unsettled when plaintiff had filed his complaint. *Beard* of course had created a far different legal climate in this Circuit.

*derson,* 5 Otto 628, 95 U.S. 628, 632–33, 24 L.Ed. 365 (1877) (citations omitted) and recently cited approvingly and quoted in part in *Texaco, Inc. v. Short,* 454 U.S. 516, 527 n. 21, 102 S.Ct. 781, 791 n. 21, 70 L.Ed.2d 738 (1982):

> This court has often decided that statutes of limitation affecting existing rights are not unconstitutional, if a reasonable time is given for the commencement of an action before the bar takes effect.... It is difficult to see why, if the legislature may prescribe a limitation where none existed before, it may not change one which has already been established.

> \*   \*   \*   \*   \*   \*

> In all such cases, the question is one of reasonableness, and we have, therefore, only to consider whether the time allowed in this statute is, under all the circumstances, reasonable.

See also *D'Andrea v. Montgomery Ward & Co.,* 571 F.2d 403, 404 (7th Cir.1978). Nor should the principle be different because a court rather than a legislature has changed the limitations period. At least absent an express and reasoned repudiation, the judiciary as much as the legislature is bound to respect the due process concerns underlying the *Terry* rule.

Not surprisingly, Illinois too adheres to the same rule. *Meegan v. Village of Tinley Park,* 52 Ill.2d 354, 359, 288 N.E.2d 423, 426 (1972) (recently reaffirmed in *Moore v. Jackson Park Hospital,* 95 Ill.2d 223, 230, 69 Ill.Dec. 191, 193, 447 N.E.2d 408, 410 (1983) ) held:

> So long as a reasonable time exists for the presentation of a claim after enactment of a statute shortening the time in which suit may be brought, the legislature may validly shorten the time as to pre-existing causes of action.

Even without reference to *Terry,* that same Illinois rule—requiring a reasonable time after the shortening of a limitations period for those who relied on the former law to file their actions—is in the nature of a tolling provision. Such tolling rules are considered part and parcel of the state statute of limitations for Section 1983 purposes under *Chardon v. Soto,* 462 U.S. 650, 656–57, 662, 103 S.Ct. 2611, 2615–16, 2619, 77 L.Ed.2d 74 (1983), reaffirming *Board of Regents v. Tomanio,* 446 U.S. 478, 480, 100 S.Ct. 1790, 1793, 64 L.Ed.2d 440 (1980).

Whether the issue is viewed in due process terms under *Terry* or in tolling terms under Illinois law, the only remaining question is what constitutes a "reasonable" grace period for filing suit. In either case it seems appropriate in the first instance to look to state law for the measure of reasonableness. Where as here state law supplies the limitations period, federal courts would appear better advised also to look to state law as to changes in limitation periods—assuming that law is at least minimally satisfactory in *Terry* terms—rather than to establish a distinct and unnecessary federal rule. And *Nergenah v. Norfolk & Western Railway Co.,* 81 Ill.App.3d 866, 868, 37 Ill.Dec. 61, 63, 401 N.E.2d 1154, 1156 (1st Dist.1980) provides a convenient summary in that regard:

> In *Anderson v. Wagner* (1978), 61 Ill. App.3d 822, 19 Ill.Dec. 190, 378 N.E.2d 805, an eight-month period for filing suit after an amendment's effective date was held to be reasonable. *Anderson* was based on *Carlin v. Peerless Gas Light Co.* (1918), 283 Ill. 142, 119 N.E. 66, wherein a nine-month period was found to be reasonable. Here, the action for loss of consortium was filed approximately 7½ months after the effective date of the amendment of the statute of limitations. On the basis of *Anderson* and *Carlin, supra,* we find that Addie Nergenah's action was filed within a reasonable time.

■ Shorters and Clark initiated this lawsuit 75 days after *Wilson* was decided. They plainly acted within a reasonable time in *Nergenah* terms. Even if *Wilson* were to require this Court to assess the timeliness of the Complaint under Section 13–202 rather than Section 13–205, plaintiffs' having filed within a reasonable time after *Wilson* would also defeat defendants' limitations defense.

### Conclusion

Defendants' motion to dismiss the Complaint as untimely is denied. Plaintiffs are ordered to file a memorandum addressing the remaining elements of defendants' Rule 12(b)(6) motion (see n. 1) on or before September 20, 1985. Defendants' reply memorandum will be due September 30, 1985. This case is set for a status hearing November 12, 1985 at 9:15 a.m.